[No. 2203–3.   Division Three.   June 15, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD ELDON ROSS, *Appellant*.

*Critchlow, Williams, Ryals & Schuster* and *Edward B. Critchlow,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Michael J. McGuigan, Deputy,* for respondent.

ROE, J.—After a barroom fight with some carnival workers, defendant went outside the tavern where his pickup truck was parked. There was sufficient testimony for the jury to conclude that defendant, using his truck, attempted to run down certain individuals with whom he had been fighting.

RCW 9.11.010 defines the crime of first–degree assault, in part, as being committed by a person who, intending to commit a felony upon the person or property of another, assaults him with a firearm or any *deadly weapon* or by any means or force likely to produce death. Defendant was not charged with that crime, but was instead charged with second–degree assault under RCW 9.11.020. The information charged that defendant did willfully and unlawfully assault certain individuals with a weapon or thing likely to produce bodily harm. The information further charged that defendant used a pickup truck, alleging that it was a deadly weapon as defined by RCW 9.95.040.[1]

---

[1] "[T]he board of prison terms and paroles shall fix the duration of his confinement. . . .

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

". . .

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of

Instruction No. 11[2] defined "deadly weapon" for the jury. Further instructions permitted the jury to find that the pickup was a deadly weapon because of the way it was used. The jury did so find in response to a special interrogatory. In effect, the prosecutor "backdoored" it. He achieved a finding equivalent to first–degree assault under a second–degree assault charge. At the outset this might raise serious equal protection questions.

■ Under RCW 9.95.040, the Board of Prison Terms and Paroles sets the minimum sentences. Since defendant had previously been convicted of a felony, and he was found to have been armed with a deadly weapon (the pickup) when he committed second–degree assault, the judge not only sentenced defendant to a term of not more than 10 years, but also interlineated "not less than 7 1/2 years," purportedly under paragraph (2) of said statute. Thus, the judge not only imposed the maximum sentence, but also the minimum under the deadly weapons statute. The defendant complains that this is a function of the board, and that the sentence was illegal. The State concedes that the judge should not have fixed the minimum, since that statutory provision is addressed to the Board of Prison Terms and Paroles. We hold that the trial court's

his offense, the duration of confinement shall not be fixed at less than seven and one–half years.

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas."

[2]Instruction No. 11 provides:
"Under the laws of the State of Washington a 'deadly weapon' may be defined as an instrument capable of causing death other than a pistol, revolver, firearm, knife, explosive or club. Whether any instrument is a 'deadly weapon' depends upon the nature of the instrument and the manner and circumstances in which it is used, and its capacity to cause death.

"In other words, the character of any implement as a deadly weapon may be determined by its capacity to inflict death or injury, and its use as a deadly weapon by the surrounding circumstances, such as the intent and present ability of the user, and the degree of force used."

having set the minimum of 7 1/2 years was in fact illegal under RCW 9.95.040. However, as stated in *In re Clark,* 24 Wn.2d 105, 113, 163 P.2d 577 (1945), a carnal knowledge case in which the judge also attempted to fix a minimum sentence:

> When a sentence is legal in one part and illegal in another, the illegal part, if separable, may be disregarded, and the legal part enforced.

That portion of the judgment which fixed defendant's confinement at not more than 10 years for second–degree assault was proper under the statute, but the remainder, to which defendant objects, must be disregarded as surplus. *State v. Loux,* 69 Wn.2d 855, 420 P.2d 693 (1966).

█ Appellate counsel, who was not trial counsel, urges that a motor vehicle cannot be a deadly weapon under the statute; hence, it was error to permit the jury to make its special finding. The trial court did not instruct the jury that the pickup truck was a deadly weapon, as defendant's brief states; rather, it permitted the jury so to find. During the trial defense counsel moved to dismiss the second–degree assault charge. He took the position that a motor vehicle is not, per se, a deadly weapon, and he argued that the State must prove a striking of the person before the jury may find that a motor vehicle is a deadly weapon in fact. He took no exception to the instructions; however, he did say: "I do take the position that the automobile is not a deadly weapon." This approach to the instructions is far from commendable; nevertheless, the trial court was adequately apprised of the issue, and the error was preserved. *State v. Colwash,* 15 Wn. App. 530, 550 P.2d 57 (1976), *aff'd,* 88 Wn.2d 468, 564 P.2d 781 (1977).

██ What is a deadly weapon has been the subject of some controversy. A difference of opinion arose between Divisions One and Two of the Court of Appeals as to whether a knife having a blade less than 3 inches may be found to be a deadly weapon. The cases[3] were analyzed in

---

[3]*Compare State v. Williams,* 3 Wn. App. 336, 475 P.2d 131 (1970), *with State v. Braun,* 11 Wn. App. 882, 526 P.2d 1230 (1974); *State v. Rolax,* 7 Wn. App. 937,

*State v. Thompson,* 88 Wn.2d 546, 564 P.2d 323 (1977), which resolved the controversy by holding that it could. At page 549 the court said that the statute

> listed certain instruments which it found to be so inherently dangerous that they should be termed "deadly" regardless of the circumstances of their use. It manifested no intent that any *weapon* which is in fact deadly should be excluded.

(Italics ours.) The court, in a nonunanimous opinion, decided that a knife having a blade 3 inches or less in length is capable of producing death; thus, it was within the purview of the statute. But a knife is, by statute, a weapon. *Thompson* stated that the statute "manifested no intent that any *weapon* which is in fact deadly should be excluded," (italics ours) but that does not answer the question here because "weapon" was not defined.

To decide that a motor vehicle could be a deadly weapon under the enhanced penalty statute would raise serious due process problems.

> Procedural due process requires that citizens be given fair notice of conduct forbidden by a penal statute. . . . Although impossible standards of specificity are not required, the statutory language must convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.

(Citations omitted.) *State v. Dougall,* 89 Wn.2d 118, 121, 570 P.2d 135 (1977). Viewing the words used in the statute: *Webster's Third New International Dictionary* (1969) at 138, defines "armed" as meaning, "Furnished or equipped with weapons of offense or defense." Thus, "A vessel is 'armed' when she is fitted with a full armament for fighting purposes." It defines "deadly weapon" as:

> Such weapons or instruments as are made and designed for offensive or defensive purposes, or for the destruction of life or the infliction of injury. . . . One likely to produce death or great bodily harm.

503 P.2d 1093 (1972); *and State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972).

*Webster's* at 487. It also defines "weapon" as:

> An instrument of offensive or defensive combat, or anything used, or designed to be used, in destroying, defeating or injuring an enemy. . . . Something to fight with.

*Webster's* at 1764. Thus, the ordinary understanding of being *armed* with a *weapon* must mean something more than driving a motor vehicle. The statute bespeaks instruments on the person which are designed to injure or kill. Admittedly, some states have considered an automobile as a deadly weapon if so used,[4] but in our view an automobile hardly fits the dictionary definition of either "armed" or "weapon."

Language in *State v. Jackson*, 70 Wn.2d 498, 424 P.2d 313 (1967) (not cited by either counsel), strengthens our position that not all instruments capable of producing bodily harm are deadly weapons. There defendant was charged with second–degree assault, but had used a knife less than 3 inches long. The court stated, at pages 502–03:

> Thus, under RCW 9.11.020, one need not be armed with a *deadly* weapon to commit second–degree assault; any instrument likely to produce bodily harm will suffice. Accordingly, when defendant used his knife in a threatening and menacing manner in such a way as to show his present intentions to attack another with it, he willfully assaulted another with a weapon, instrument or thing likely to produce bodily harm . . .

The court thus distinguished deadly weapons, requiring the enhanced penalty, from instruments likely to produce bodily harm within the assault statute.

RCW 9.11.020(5) states that a person is guilty of second–degree assault if he "[b]eing armed with a deadly weapon shall willfully assault another with a whip". It could thus be

---

[4]Every case we have had cited to us, or have found ourselves, which calls a motor vehicle a deadly weapon has decided this issue in the context of an assault or aggravated assault statute, and not in terms of an enhanced penalty statute such as that before us now. *See, e.g., People v. Goolsby*, 284 Mich. 375, 279 N.W. 867 (1938).

argued that a whip is not a deadly weapon under the statute. This would lessen the breadth of the class, and support the nonextension to an automobile.

Had the legislature intended, it could have specifically included motor vehicles within the enhanced penalty statute. *Cf.* RCW 9A.04.110(6). There is no question that an automobile may be a lethal weapon, but that does not mean it is a deadly weapon within the statute. When the enhanced penalty statute was enacted, motor vehicles were quite common, and were known to be lethal instruments, but the only weapons specifically mentioned in the statute are either hand held, or explosive, or those containing poisonous or injurious gas. Applying the ejusdem generis doctrine, a motor vehicle certainly does not come within these categories. Penal statutes are construed strictly against the State and in favor of an accused. *State v. Thompson,* 38 Wn.2d 774, 779, 232 P.2d 87 (1951). Accordingly, we must conclude an automobile is not a deadly weapon within the meaning of RCW 9.95.040.

The legislature intended to impose a greater penalty upon those who, armed with a deadly weapon when committing a felony, are thereby more likely to cause grievous bodily harm or death. Clearly, the intent behind the enhanced punishment was to discourage using or even carrying such weapons. Such ends would hardly be served by applying the enhanced penalty statute to motor vehicles. People will still use them as before, and there would seem to be no limit on the crimes that could be committed with an automobile.

We do not say that an automobile could not be used in an assault or is not likely to produce bodily harm. That may also be true of many other articles used in everyday life. But we do hold that it is not a deadly weapon as contemplated by the statute requiring mandatory enhanced penalties.

Defendant also alleges as error that the trial court refused to hear his motion for arrest of judgment because it was not timely filed. There is no merit to this, since the

only factor to exculpate the late filing was substitution of counsel, of which the trial court was aware. We find no abuse of discretion.

The charge of second–degree assault was correct, and there was sufficient evidence adduced to support that conviction. Accordingly, that part of the judgment and sentence which finds the defendant guilty of second–degree assault and sentences him to the Department of Social and Health Services for a term of not more than 10 years is affirmed. That part which provides that he shall serve a minimum of 7 1/2 years is in error and will be disregarded. The jury's finding that the defendant was armed with a deadly weapon will be set aside.[5]

GREEN and McINTURFF, JJ., concur.

Reconsideration denied July 12, 1978.

Review denied by Supreme Court March 16, 1979.

---

[5]In this case counsel cited an unpublished opinion from another division of the Court of Appeals. Unpublished opinions should not be cited as authority and should not be included in briefs. *See State v. Fitzpatrick,* 5 Wn. App. 661, 668, 491 P.2d 262 (1971), which recites:

[T]hat unpublished opinions of the Court of Appeals will not be considered in the Court of Appeals and should not be considered in the trial courts. They do not become a part of the common law of the state of Washington. If the trial courts were to consider them it would not only be wasteful of their time but would permit any group of lawyers to collect such opinions and create an unfair advantage by citing cases not available to their opponents.