[No. 47097-9.   En Banc.   April 23, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. ELSIE
MAE HALL, *Petitioner*.

*Lewis H. Nomura* of *Seattle–King County Public Defender Association*, for petitioner.

*Norm Maleng, Prosecuting Attorney, Lee D. Yates, Senior Deputy, Richard Birinyi, Special Deputy*, and *Deanna Jennings Fuller, Deputy*, for respondent.

STAFFORD, J.—Elsie Hall was convicted of second degree assault while armed with a deadly weapon which was also a firearm. On appeal she challenged a jury instruction on

second degree assault which designated three victims of the assault in the disjunctive. Defendant also assigned error to the omission of the State's burden of proof from a special instruction on the deadly weapon and firearm allegations. Finding no prejudicial error, we affirm the Court of Appeals.

In the early morning hours of November 14, 1978, defendant Hall and Ardell Alexander became involved in a fight over a wig and some clothing Ms. Alexander had borrowed from defendant. At one point Alexander pinned defendant to the sidewalk and was hitting her. Defendant threatened to kill Alexander if and when she got up. The police arrived, the altercation came to an end and everyone went their way. A pistol with which defendant was said to have been armed was never found. Ms. Alexander, James Harris and Sharlyn Shavers drove to Shavers' house. Thereafter Alexander left.

About 6 a.m., during Alexander's absence, three people began shooting into the house. At that time the house was occupied by James Harris, Sharlyn Shavers and her sister Natalie. The first shots went through the main entrance door and through the living room causing the occupants to scatter in all directions within the house. At least six shots were fired through the house and one into the ground. Sharlyn was wounded in the arm.

Harris went to the door and yelled at defendant Hall, whom he saw carrying a rifle. He then returned inside the house, obtained a gun and began to return the fire. Sharlyn testified that after the shooting began she recognized defendant's voice yelling obscenities and calling for Alexander to come out. During that period of time neighbors said they heard between 14 and 20 shots fired. It was determined that two bullets went through the bedroom, one into the kitchen and three into the living room. The living room window was also broken. No evidence was presented that the shots were directed at any particular occupant of the house; all indications are that every occupant was endangered.

The three assailants left the scene in a Far West taxi. One was staggering. Shortly thereafter, defendant Hall's brother was taken to the Providence Medical Center emergency room by a Far West taxi. He was suffering from a gunshot wound in the neck. Defendant was apprehended in a Far West taxi near the hospital a few minutes later. Her clothing was stained with human blood of the same blood type as her brother's.

Defendant was charged with two counts of assault in the first degree, each containing special allegations that defendant was armed with a deadly weapon under RCW 9.95.040 and a firearm under RCW 9.41.025. Count 1 related to the initial fight and count 2 pertained to the shooting incident. Defendant was acquitted on count 1 and found guilty of the lesser offense of second degree assault on count 2. The jury also entered special verdicts that defendant was armed with a deadly weapon and a firearm at the time of committing the second degree assault.

Defendant appealed the conviction but the verdict was affirmed by the Court of Appeals. Defendant seeks review by this court on two basic issues: (1) whether the trial court committed error by instructing the jury the State could establish defendant's guilt by proving she assaulted James Harris *or* Sharlyn Shavers *or* Natalie Shavers although the assault against them had been charged in the conjunctive; (2) whether the trial court erred by failing to instruct the jury that the State must prove beyond a reasonable doubt the elements of the special allegations that defendant was armed with a deadly weapon and a firearm at the time of committing the crime.

I

*Charging in the conjunctive, instructing in the disjunctive.*

Defendant failed to propose a second degree assault instruction and failed to except to the instruction given by the trial court. It is asserted the matter may be raised for the first time on appeal, however, because the instruction

violated a fundamental constitutional right. *State v. Green,* 94 Wn.2d 216, 231, 616 P.2d 628 (1980); *State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977).

Defendant cites *State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980), for the proposition that the challenged instruction violated a constitutional requirement that jury verdicts in criminal cases must be unanimous. We note with interest, however, that *Stephens* did not overtly decide that the asserted error was one of constitutional proportions. Rather, appellant made the constitutional assertion and the court, without comment, employed a "constitutional" harmless error standard rather than the more lenient general standard used by the Court of Appeals. It left undecided, however, the specific constitutional issues urged by appellant therein and by defendant herein.

■■ In the instant case it is not necessary to reach that constitutional question and thus we decline to do so. A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case. *Ohnstad v. Tacoma,* 64 Wn.2d 904, 907, 395 P.2d 97 (1964); *accord, Bresolin v. Morris,* 86 Wn.2d 241, 250, 543 P.2d 325 (1975). We hold only that the alleged instructional error was, under the facts of this case, harmless beyond a reasonable doubt and thus not reversible error. *See State v. Burri,* 87 Wn.2d 175, 182, 550 P.2d 507 (1976); *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

While in *Stephens* it was important at which of two possible victims a single shot was directed, and there was evidence to indicate that only one person was shot at, such was not true in the instant case. Here there was no issue of whether certain of the three alleged victims was or was not the subject of the assault. All three were in the living room at the time shots were fired indiscriminately into that room. Thereafter, all evidence shows the occupants ran from room to room and that bullets had been fired into those rooms. Whether all or less than all occupants were assaulted was not a contested issue in the instant case. The

only real issues, *i.e.,* the identity of the assailant and her intent to kill, are not related to the problem involved in the challenged instruction. From a review of the entire record, including the closing arguments, we are convinced beyond a reasonable doubt the asserted error was in no way prejudicial to the substantial rights of defendant.

## II

*Failure to instruct on reasonable doubt in the special allegation instruction.*

Defendant next contends the jury could not have properly considered the special verdicts because instruction No. 20 omitted reference to the State's burden of proof. Again, this issue was not raised by exception in the trial court. Nevertheless, we address the allegation because defendant asserts the violation of a fundamental constitutional right. *State v. Green, supra.*

In *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980), we held that general instructions on presumption of innocence and the State's burden of proving an underlying offense beyond a reasonable doubt are insufficient for a deadly weapon special verdict, under RCW 9.95.040, where the fact to be determined is not an element of the crime charged. The same apparent error is said to have occurred here, although in addition to the deadly weapon allegation there was also a firearm allegation under RCW 9.41.025.

Nevertheless, we need not reach the asserted constitutional issue, and do not do so. As with Issue I, we hold only that the asserted instructional error was, under the facts of this case, harmless beyond a reasonable doubt and thus was not reversible error. While RCW 9.95.040 requires the presence of a deadly weapon *in fact* in order for the sentence enhancement provisions to operate under *Tongate* and the same would appear to be true of a firearm under RCW 9.41.025, there is no question of their use in the instant case. No real issue is raised in this regard. It is undisputed that guns were in fact seen, guns were in fact used and real bullets were in fact fired. At least six shots fired into the

house were accounted for by holes in the walls. Finally, one of the victims was actually wounded. With these facts before us, we have no hesitancy in holding that the jury could have reached no result other than that beyond a reasonable doubt the assault occurred by means of a deadly weapon and a firearm. There simply is no reasonable inference to the contrary under the facts before us.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., ROSELLINI, UTTER, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., and WORSWICK, J. Pro Tem., concur.