[No. 8014-8-I.   Division One.   September 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY
VAN PILON, *Defendant,* JOANNE MARIE
ROSENKRANZ, *Appellant.*

*Michael E. Metzger,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kathryn Goater, Deputy,* for respondent.

JAMES, J.—Defendant Joanne Marie Rosenkranz appeals her conviction following jury trial on two counts of first degree robbery with special verdicts that she was armed with a deadly weapon at the time she committed the crimes. We reverse the conviction and strike the deadly weapon verdicts.

On June 15, 1979, a man and a woman robbed a pharmacy in Lake City. Police arrested Rosenkranz on June 21, 1979. The robbery victims identified her at a lineup and at trial as one of the robbers.

After police arrested Rosenkranz, they impounded her van. The van was taken to the police garage. After the victims had identified Rosenkranz as one of the robbers, officers obtained a search warrant authorizing them to search the van. The warrant provides that the officers could search the van

for the following evidence: blue levi style jeans jacket, other items of clothing worn by suspects during robbery

and items showing ownership and control of van and its contents.

The officers searched the van, finding a bill of sale which established that Rosenkranz was the owner of the vehicle, and a jeans jacket. Officers also searched Rosenkranz' purse which was found in the van. Inside the purse was a green sock that contained drugs taken from the pharmacy.

Rosenkranz contends the drugs seized from her purse should have been suppressed. We do not agree.

■ The officers' search of the purse was within the scope of the search warrant. The warrant authorized the officers to search for "items showing ownership and control of [the] van and its contents." The police authority extended to pursuing evidence relating to ownership of the contents of the vehicle. Rosenkranz' purse was a logical repository for evidence named in the warrant. *See generally* 2 W. LaFave, *Search and Seizure* § 4.10(d) (1978). Because the police were justified in searching the purse, their inadvertent discovery of the drugs taken from the pharmacy justified the seizure under the plain view doctrine. *See State v. Murray,* 84 Wn.2d 527, 527 P.2d 1303 (1974).

At trial, Rosenkranz admitted her participation in the robbery and testified that her codefendant had not been involved. She further testified she was not armed during the robbery and did not know her coparticipant was armed. In contrast, the robbery victims testified that they observed what could have been a silhouette of a weapon beneath Rosenkranz' coat, and that Rosenkranz told the woman victim not to move or she would "blow [her] f—— head off." Neither witness, however, observed Rosenkranz display a gun or what appeared to be a deadly weapon. Rosenkranz' proximity to her coparticipant and apparent attentiveness to his actions was the subject of conflicting testimony by Rosenkranz and the victims.

The trial judge gave "to convict" instructions for first degree robbery and, pursuant to agreement between coun-

sel, the lesser included offense of second degree robbery.[1] Instruction 14 advised the jury that first degree robbery is committed if, *inter alia,*

> in the commission of these acts or in immediate flight therefrom the defendant, or accomplice, was armed with a deadly weapon or displayed what appeared to be a firearm or other deadly weapon; . . .

Instruction 15 advised the jury that

> if an accomplice to a defendant is armed with a deadly weapon in the commission of a crime, both are considered armed with a deadly weapon.

During its deliberations, the jury submitted these questions to the trial judge:

> Can a person be guilty of 1st degree robbery if they [*sic*] did not know that a gun was going to be used, or displayed, in that robbery[?]
>
> Does Jury Instruction No. 15 apply to the Special Verdict Interrogatory regarding Joanne Rosenkranz's being armed with a deadly weapon at the time of the commission of the crime as charged?
>
> Does the attached Special Verdict call for a factual question whether Joanne Rosenkranz was actually armed with a deadly weapon, or does the attached Special Verdict call for the jury to apply the law as given by the Court to this interrogatory?

The trial judge responded that jurors should reread their instructions. The verdicts from which Rosenkranz appeals followed.

Rosenkranz' further assignments of error concern the absence of any instructional requirement that she possessed knowledge her coparticipant was armed with a deadly weapon or what appeared to be a deadly weapon in order to be convicted of first degree robbery or to be subjected to

---

[1] RCW 9A.56.200(1) provides:

"A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

"(a) Is armed with a deadly weapon; or

"(b) Displays what appears to be a firearm or other deadly weapon; . . ."

RCW 9A.56.210(1) provides:

"A person is guilty of robbery in the second degree if he commits robbery."

948

the enhanced sentencing provisions of RCW 9.95.040. The State initially asserts neither contention has been preserved for appeal because the defense neither made proper objections to the instructions given nor requested instructions embodying its theory.

Rosenkranz' trial counsel excepted to instruction 15, arguing that it erroneously *required* the jury to find Rosenkranz was armed with a deadly weapon if her coparticipant was armed, without regard to whether she was aware the coparticipant was armed. Rosenkranz' exception and argument adequately preserved an assignment of error to the giving of instruction 15 with reference to the special verdicts, *see, e.g., State v. Ross,* 20 Wn. App. 448, 580 P.2d 1110 (1978). But we cannot conclude the trial judge was adequately apprised of the objections which Rosenkranz now raises concerning the accomplice instructions. Furthermore, the instructions proposed by Rosenkranz provided no basis upon which the jury could consider lack of knowledge of the coparticipant's weaponry in determining if Rosenkranz was guilty of first degree robbery or subject to the deadly weapons statute.

Except for instructional error which invades a constitutional right of the accused, an appellate court will not consider errors claimed in instructions given or refused unless there was an exception taken at trial adequate to direct the trial judge's attention to the claimed error. *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966). An instruction which prejudicially relieves the State of its burden of proof or prejudicially deprives the defendant of the benefit of having the jury pass upon a significant and disputed issue invades a defendant's right to a fair trial. *State v. Louie, supra; State v. Stowers,* 2 Wn. App. 868, 471 P.2d 115 (1970). *See State v. Kroll, supra; State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968); *State v. Fesser,* 23 Wn. App. 422, 595 P.2d 955 (1979). Prejudice may be demonstrated where an erroneous instruction is applied to a close

factual question. *State v. Theroff, supra; State v. Fesser, supra.* Here, the facts were close and disputed, prejudice is indicated, and Rosenkranz' constitutional right to a fair trial implicated. Nor can Rosenkranz' contentions be dismissed as without merit. *See State v. Plakke,* 31 Wn. App. 262, 639 P.2d 796 (1982) (accomplice liability for first degree robbery); *State v. Silvernail,* 25 Wn. App. 185, 193 n.2, 605 P.2d 1279 (1980) (accomplice liability under the deadly weapon statute). Consequently, we consider Rosenkranz' contentions despite limited efforts to preserve the error at trial.

In the recent decision of *State v. Plakke, supra,* it is held that accomplice liability for first degree robbery requires proof beyond a reasonable doubt that the alleged accomplice was aware of his principal's possession of a deadly weapon during the commission of the crime. We agree with the *Plakke* court that the criminal statutes establishing rules of accomplice liability and differentiating degrees of robbery based on the presence of a firearm or an actual or apparent deadly weapon, and constitutional precepts "impose criminal liability commensurate with the actor's mental culpability or mens rea." *State v. Plakke, supra* at 266. We adopt the analysis and holding of *Plakke* here. Accordingly, Rosenkranz' conviction for first degree robbery must be set aside.

Rosenkranz has requested a new trial or, in the alternative, that her case be remanded to the trial court to enter a conviction for second degree robbery. The appropriate relief on these facts, consistent with the limitations of the double jeopardy clause, U.S. Const. amend. 5, Const. art. 1, § 9, is to remand for sentencing for second degree robbery. *State v. Plakke, supra.*

A separate, though analogous, issue remains: Did the trial judge err by failing to instruct the jury that before it could return a deadly weapon special verdict, it must find Rosenkranz was actually armed with a deadly weapon or had knowledge that her coparticipant was so armed? Although we have consistently held that an unarmed accomplice of

an armed principal must be sentenced pursuant to RCW 9.41.025 and RCW 9.95.040, *State v. Silvernail, supra; State v. Rieger,* 26 Wn. App. 321, 613 P.2d 163 (1980), *rev'd on other grounds,* 96 Wn.2d 546, 637 P.2d 236 (1981); *State v. Willoughby,* 29 Wn. App. 828, 630 P.2d 1387 (1981), we expressly reserved for decision the precise issue which Rosenkranz raises here. *State v. Silvernail, supra* at 193 n.2.

■ Two states which, like Washington, permit enhanced sentencing of an unarmed accomplice of an armed principal, have found such provisions applicable only to an unarmed accomplice who is aware of his principal's possession of a deadly weapon or firearm. *Key v. State,* 563 S.W.2d 184 (Tenn. 1978); *Anderson v. State,* 95 Nev. 625, 600 P.2d 241 (1979). The rationale of both decisions is as stated in *Key v. State, supra* at 188:

> The possession necessary to invoke the statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm. Such possession may never exist absent knowledge that the other participant is in the possession of a firearm.

Some approval of this rationale is indicated in *State v. Russell,* 25 Wn. App. 933, 938, 611 P.2d 1320 (1980), where we stated:

> While a principal may not be subject to the penalty enhancement provisions where he is unarmed and without knowledge that his accomplice is armed, this does not mean that the provision is inapplicable to the armed accomplice. *See Key v. State,* 563 S.W.2d 184 (Tenn. 1978).

*Russell,* however, presented no issue concerning the liability of an unarmed party without knowledge that the other party was armed and does not hold that the principal in that case was exempt from the enhanced sentencing provisions.

In *State v. Rieger,* 26 Wn. App. at 325, we approved a jury instruction which "properly limited constructive pos-

session to dominion and control over the firearm which might be exercised immediately or spontaneously" against defendant's contentions that RCW 9.41.025 applied only to the personally armed defendant. Of course, knowledge of the weapon's presence would be a necessary prerequisite to the exercise of dominion or control over the weapon.

A majority of our Supreme Court found the facts in *Rieger* devoid of any connection between the weapon and any of the defendants (unlike the facts here) and reversed, stating:

> There is no reasonable basis by which the court could find from the record that there was possession, constructive or otherwise, or any knowledge by any of the defendants of the presence or even existence of the firearm, much less proof beyond a reasonable doubt to be found by the jury.

*State v. Rieger,* 96 Wn.2d at 549. The quoted language refers to "knowledge by any of the defendants"; this could mean knowledge by "any" one of the defendants would be sufficient. The opinion also refers to "constructive possession," which has consistently been defined as requiring knowledge of the weapon's presence. *See State v. Rieger,* 26 Wn. App. at 325; *Key v. State, supra.*

If all coparticipants are armed with deadly weapons or know of the presence of weapons, they are equally culpable for the aggravated danger thereby created. That the participants' armory was too limited to provide a weapon for each participant who accepts this aggravated danger as a necessary risk in furtherance of their criminal purpose should be immaterial. But the participant who lacks knowledge that a weapon was present is not equally culpable for the aggravated danger to public safety.

The State points to our language in *State v. Silvernail, supra* at 193 that "the danger to human life is at least as great when several participants decide to use a deadly weapon" as when each participant is personally armed, as supporting enhanced sentencing of a defendant in Rosenkranz' position. The quantum of danger to human life, in

an absolute sense, is probably no less when one participant decides to use a deadly weapon in furtherance of the scheme or plan shared by all participants, even if the other participants are unaware that a deadly weapon is to be used in commission of the offense. If, however, an accomplice lacks knowledge of the presence of the deadly weapon at the outset of the crime, and acquires no knowledge of its presence during the commission of the crime, no additional potential for violence arises which could be attributed to such an accomplice. If a properly instructed jury is not persuaded that facts giving rise to that additional potential for violence exist, the legislative purpose is not frustrated. We conclude that a defendant must have actual knowledge of the presence of a deadly weapon in order to be subjected to the enhanced penalty provisions of RCW 9.95.040.

We remand for sentencing for second degree robbery and strike the deadly weapon verdicts. In view of our disposition of the case, we do not reach Rosenkranz' remaining assignment of error.

RINGOLD, J., concurs.

WILLIAMS, J. (dissenting)—The deadly weapon finding should be stricken. In all other respects, the judgment should be affirmed. As an accomplice, Rosenkranz was responsible for the crime of the robbery she was helping her codefendant commit. The Supreme Court has observed that:

> The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant. The elements of the crime remain the same.

*State v. Carothers*, 84 Wn.2d 256, 264, 525 P.2d 731 (1974).

This is because RCW 9A.08.020 reads in pertinent part:

> Liability for conduct of another—Complicity. (1) A person is guilty of a crime if it is committed by the con-

duct of another person for which he is legally accountable.

(2) A person is legally accountable for the conduct of another person when:

. . .

(c) He is an accomplice of such other person in the commission of the crime.

(3) A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

. . .

(ii) aids or agrees to aid such other person in planning or committing it; . . .

. . .

(6) A person legally accountable for the conduct of another person may be convicted on proof of the commission of the crime and of his complicity therein, . . .

In *State v. Baylor,* 17 Wn. App. 616, 618, 565 P.2d 99 (1977), Division Two of this court said:

In this state when it cannot be determined which of two defendants actually committed a crime, and which one encouraged or counseled, it is not necessary to establish the role of each. It is sufficient if there is a showing that each defendant was involved in the commission of the crime, having committed at least one overt act as specified in RCW 9.01.030 (superseded for offenses committed after July 1, 1976, by RCW 9A.08.020).

The majority opinion would have it that Rosenkranz as an accomplice is accountable only for conduct of the principal she knew about. If he didn't tell her in advance of his whole plan or if he varied from it during the course of the robbery, then she was not bound. Thus by analogy, if she agreed to help steal money from a safe believed to contain $200 in cash her participation in the crime could only result in third degree theft even though her principal finds and steals $1,600. RCW 9A.56.030 and .050. Or in a case of burglary, if she did not know that as events developed the principal would assault someone during the course of the crime, she could only be convicted of second degree rather than first degree burglary. RCW 9A.52.020 and .030. Such

results are untenable.

Once Rosenkranz embarked upon the course of helping with the robbery (and to share in the fruits thereof) she became accountable for the conduct of the principal in committing it.

Reconsideration denied March 22, 1983.

Review by Supreme Court pending May 13, 1983.