[Nos. 11543-0-I; 11544-8-I. Division One. January 23, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID L. BROWN, *Defendant,* LARRY D. MYLES, ET AL, *Appellants.*

*Elizabeth Selleck* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Sharon Creeden* and *James A. Trujillo, Deputies,* for respondent.

CALLOW, J.—Larry Myles and Valerie Washington appeal a jury verdict finding them guilty of first degree burglary while armed with a deadly weapon and firearm.

Washington contends the trial court erred when it failed to instruct the jury that the State had the burden of proving beyond a reasonable doubt she knew her accomplices were armed during commission of the burglary. Both defendants assign error to the trial court's failure to instruct the jury that theft requires an intent to permanently deprive a rightful owner of his property and the court's failure to give the defendants' proposed instructions on the claim of title defense.

On August 29, 1981, Larry Myles, Valerie Washington and David Brown went to the apartment of Washington's ex–husband, Donald Morrow. The testimony was in conflict as to the purpose of their visit. The defendants claimed Morrow stole a purse and gun from Washington's apartment earlier that day. Morrow denied he visited Washington that day or that he took anything from her apartment. Morrow claimed Washington was angry at him since he could not find their son's birth certificate and had threatened to come over and look for it herself. Witnesses for both the defense and the State corroborated Morrow's *and* the defendants' stories.

On the way to Morrow's apartment, the three went by Brown's house in Tacoma. Brown went to his apartment, stuck a gun in his pants, and walked out to the car. Washington denied any knowledge of the reason for stopping by Brown's apartment. She also claimed she was unaware that either Brown or Myles had possession of a gun during the incident.

After arriving at Morrow's apartment complex, Brown and Myles walked upstairs to Morrow's second–floor apartment. Washington claimed she remained downstairs until after Brown and Myles had entered the apartment. How-

ever, witnesses testified they saw Washington outside the front door before Brown kicked the door in and that Washington entered the apartment after Myles. Myles knocked on Morrow's partially ajar front door. Morrow's godmother, Ramona George, jumped up and shut the door since she did not recognize either Myles or Brown. George claimed Washington had not yet come into her field of vision. After motioning at the window that they wished to speak with Morrow, Brown kicked the door in and entered the apartment flourishing a gun. Myles entered after him. Washington claims she never entered the apartment and stood in the doorway during the entire incident.

Just before Brown kicked the door in, Morrow came out of his bedroom and saw Myles through the living room window. He claims he saw Washington standing near Myles and called the police. Morrow claims he saw the gun in Brown's hand as soon as Brown kicked the door in, immediately dropped the phone, ran to his bedroom, and jumped through the plate glass window.

After Brown and Myles entered the apartment, Brown either handed the gun to Myles or Myles took the gun from him. In any event, Myles remained in possession of the gun until they left the apartment. Myles claims he never pointed the gun at anyone, and after looking in the bedrooms for Morrow, put the gun in his pants. There was testimony to the contrary.

When the defendants realized that Morrow had escaped through the second–floor window, Washington suggested they take Morrow's stereo to secure the return of the purse and gun. The police arrived as the defendants were loading the stereo into their van. Myles or Brown then tossed the gun into the bushes where it was retrieved by the police the next day.

Brown, Myles and Washington were charged with burglary in the first degree while armed with a deadly weapon and firearm. The underlying crimes alleged were theft and assault. Codefendant David Brown failed to appear for the omnibus hearing and was not present during the trial. The

jury found Myles and Washington guilty as charged. Washington and Myles consolidated their appeals.

The *first* issue applies only to defendant Valerie Washington. Washington claims the trial court erred by not instructing the jury that the State had the burden of proving beyond a reasonable doubt that Washington knew her accomplices were armed at the time of the crime. She claims the trial court's failure to instruct the jury on the State's burden of proof mandates reversal of her conviction for first degree burglary and vacation of the deadly weapon and firearm special verdict.

*State v. McKim*, 98 Wn.2d 111, 653 P.2d 1040 (1982) held that in order for a "*deadly weapon enhancement* provision to apply to an unarmed codefendant, the State must prove beyond a reasonable doubt that the accused knew his or her accomplice was armed with a deadly weapon at the time of the commission of the crime." (Italics ours.) *McKim*, at 118.

Washington's trial occurred before the Supreme Court entered its opinion in *McKim*. Thus, she did not request the court to instruct the jury on the State's burden of proof regarding accomplice liability and the deadly weapon statutes, nor did Washington take exception to the trial court's failure to so instruct.

> Except for instructional error which invades a constitutional right of the accused, an appellate court will not consider errors claimed in instructions given or refused unless there was an exception taken at trial adequate to direct the trial judge's attention to the claimed error.

*State v. Van Pilon*, 32 Wn. App. 944, 948, 651 P.2d 234 (1982). *See State v. Theroff*, 95 Wn.2d 385, 622 P.2d 1240 (1980). The deadly weapon and firearm special verdict instructions did not inform the jury of the State's burden of proof regarding Washington's knowledge of whether her accomplices were armed.

> An instruction which prejudicially relieves the State of its burden of proof or prejudicially deprives the defendant of the benefit of having the jury pass upon a signifi-

cant and disputed issue invades a defendant's right to a fair trial.

*State v. Van Pilon, supra* at 948. *See State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042 (1967). Prejudice may be demonstrated where an erroneous instruction is applied to a close factual question. *State v. Van Pilon, supra* at 948–49.

The jury was erroneously instructed that if one accomplice is found armed with a deadly weapon, all coparticipants are deemed armed. However, *McKim* held that the State must prove actual or constructive possession of a weapon by the defendant before a defendant's sentence may be enhanced by a deadly weapon special verdict. It is not disputed that Washington did not possess a deadly weapon during commission of the burglary. Whether Washington constructively possessed the weapon, by virtue of her knowledge of the presence of the gun, is disputed. Thus, Washington's right to a fair trial was prejudiced by the trial court's instruction.

*McKim* interpreted the statutory language of the accomplice liability and deadly weapon statutes. The court concluded that the new accomplice liability statute's "applicability is limited to accountability for *crimes.*" *McKim,* at 116. The deadly weapon statutes do not define crimes. *State v. Claborn,* 95 Wn.2d 629, 637, 628 P.2d 467 (1981). Thus, the State could not rely on the complicity statute as the triggering device for a deadly weapon penalty enhancement. Instead, *McKim* "look[ed] to the operative language of RCW 9.95.015." *McKim,* at 116. RCW 9.95.015 requires a finding of "whether or not the *accused* was armed with a deadly weapon . . .". (Italics ours.) RCW 9.95.015. *McKim* concluded that the statute requires a finding that the defendant was either personally armed or constructively armed with a deadly weapon during commission of the offense before a deadly weapon sentence enhancement could be imposed.

The phrase "constructively armed with a deadly weapon" means the accused's accomplice must have been actually

armed with a deadly weapon and the accused must have had *knowledge* that the accomplice was so armed.

*McKim,* at 117. The court then struck the special verdict as to the deadly weapon penalty enhancement since the jury was improperly instructed on the standard of proof regarding the deadly weapon allegations. The deadly weapon special verdict entered against Washington is reversed.

The issue in *McKim* was limited to the State's burden of proof in regard to the deadly weapon enhancement statutes. While the decision entered in *State v. McKim* reversed the deadly weapon special verdict, McKim's conviction for first degree robbery was affirmed. Nonetheless, Washington cites *State v. Plakke,* 31 Wn. App. 262, 639 P.2d 796 (1982) and *State v. Van Pilon, supra,* to support her claim that her conviction for first degree burglary must be reversed. *Plakke* held that the State had the burden of proving beyond a reasonable doubt that an accomplice to first degree robbery knew his coparticipant was armed with a deadly weapon. *Plakke* stated:

> [T]he statutory scheme and constitutional precepts impose criminal liability commensurate with the actor's mental culpability or mens rea. To impose principal liability, the accomplice must "share" in his principal's guilty knowledge. Accordingly, when the evidence permits a finding that an alleged accomplice to first degree robbery is unaware of the presence of a weapon or what appears to be a weapon, the alleged accomplice is entitled to an instruction on second degree robbery.

(Citation omitted.) *Plakke,* at 266. The trial court in *Plakke* refused to instruct the jury on second degree robbery. The appellate court felt the trial court erred by not giving the instructions and reversed Plakke's first degree robbery conviction. Plakke's case was remanded to the trial court for resentencing on second degree robbery since the jury's response to the special verdict form indicated its belief that Plakke was unaware of his codefendant's possession of a knife during the robbery.

*Van Pilon* followed the holding of *Plakke,* as did *State v. Papadopoulos,* 34 Wn. App. 397, 404, 662 P.2d 59 (1983).

The combined reasoning of *Plakke, Van Pilon,* and *McKim* compels the conclusion that an unarmed defendant cannot be punished for possession or use of a firearm or deadly weapon in the commission of a crime unless the trier of fact enters a special finding of fact beyond a reasonable doubt that the unarmed defendant had actual or constructive knowledge that a coparticipant in the crime possessed such a weapon.

*Papadopoulos,* at 404.

■ However, *State v. Davis,* 35 Wn. App. 506, 667 P.2d 1117 (1983) refused to follow *Plakke* and implicitly rejected *Van Pilon* and *Papadopoulos. Davis* stated its rationale:

In [the *McKim*] analysis, the court noted that the present complicity statute, RCW 9A.08.020, makes an accomplice *equally* liable for the substantive crime, while sentence enhancement must depend on the accomplice's own misconduct. . . .

This analysis reveals why we overrule *Plakke.* Accomplice liability for the substantive crime need not require such a high level of misconduct as does sentence enhancement under *McKim.*

(Italics ours.) *Davis,* at 510–11. *Davis* reaffirmed the concept of accomplice liability stated in *State v. Carothers,* 84 Wn.2d 256, 264, 525 P.2d 731 (1974):

The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant. The elements of the crime remain the same.

*Davis,* at 511.

We adopt the rationale of *Davis* after reviewing *Plakke, Van Pilon, Papadopoulos,* and *McKim.* Indeed, *McKim* stated:

We recognize that in most crimes involving the use of deadly weapons, the coparticipants are aware that one or more of them is armed. That is no reason, however, for imposing strict liability [of penalty enhancements] on all coparticipants without regard to each participant's

knowledge that another is so armed. Such strict liability was possible under the old accomplice liability statute . . . The new complicity statute, by contrast, makes an accomplice equally liable only for the substantive crime—any sentence enhancement must depend on the accused's own misconduct.

(Italics ours.) *McKim,* at 117. Washington's conviction for first degree burglary is affirmed; the special verdict finding is vacated.

The *second* issue is whether the trial court erred when it failed to instruct the jury that theft requires an intent to permanently deprive a rightful owner of his property. Theft was alleged as one of the underlying crimes of the burglary charge.

In *State v. Burnham,* 19 Wn. App. 442, 576 P.2d 917 (1978), the defendant argued that the following theft instruction was improper:

The phrase "intent to deprive" means the intent to divest the owner of property of control and possession of his property.

It is no defense to a person taking another's property *that he intended* to or did *return it* at a later time.

*Burnham,* at 444. The court in *Burnham* agreed that intent to *permanently* deprive is an element of the crime of theft as defined in RCW 9A.56.020(1)(a). "The second paragraph of instruction No. 9 incorrectly states the law, for it would permit a finding of guilt even if defendant took the property intending to later return it to the owner." *Burnham,* at 445. Burnham's conviction was, however, affirmed on the basis of harmless error.

Here, the trial court improperly refused to instruct the jury that theft requires an intent to *permanently* deprive. As in *Burnham,* the error was harmless.

A "harmless error" is one which is "'*trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*'"

*State v. Pam,* 98 Wn.2d 748, 754, 659 P.2d 454 (1983)

(quoting *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977)). The State has the burden of proving the error was harmless beyond a reasonable doubt. *Pam*, at 754.

Here, the erroneous theft instructions did not affect the final outcome of the case beyond a reasonable doubt. By Myles' own admissions there was still overwhelming evidence that he was guilty of assault. The jury was properly instructed on assault:

> An assault is an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted, but it is sufficient if an apprehension and fear of bodily injury is created in another.
>
> An assault is also an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

Apprehension on the part of the victim is most evident in this case. First of all, two unknown men kicked the door in and unlawfully entered the apartment. One witness testified she thought the gun was pointed at her. Another witness testified she assumed the gun was loaded and felt threatened by it. Morrow's escape through the second–story window certainly evidences apprehension on his part. We hold the trial court's error was harmless.[1]

*Finally,* did the trial court err by refusing to instruct the jury on a good faith claim of title defense to theft?

The defendants argue that there was sufficient evidence to warrant an instruction on the good faith claim of title defense and that the trial court erred in failing to give the

---

[1]The recent case of *State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983) supports our conclusion that the erroneous instruction was harmless beyond a reasonable doubt. *Johnson* held that it was error in a burglary prosecution for the trial court to fail to specify and define the crime or crimes allegedly intended. *Johnson*, at 625. In *Johnson*, the jury was not instructed on the intended crimes; nonetheless, the decision held the error harmless. We also hold the error here harmless.

requested instruction.

RCW 9A.56.020(2) provides that:

> In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable.

■ However, the trial court did not err in refusing to instruct on the good faith claim of title defense. "An instruction not warranted by the evidence need not be given." *State v. Aleshire,* 89 Wn.2d 67, 71, 568 P.2d 799 (1977); *State v. Gibson,* 32 Wn. App. 217, 646 P.2d 786 (1982). The record here was devoid of evidence to support an instruction on the good faith claim of title defense. Neither Myles nor Washington offered evidence that they had a claim of title to the stereo. Washington testified she took the stereo, not because it belonged to her, but because Morrow allegedly stole her purse:

> "The stereo. He likes that. Let's take that stereo," and I said tell Donald when he wants to give me my purse back he can have the stereo back because it means nothing to me, but I'm going to take it because he took something out of my house and I'll take it.

The good faith claim of title defense to theft applies only when a claim of title can be made to the specific property acquired. *State v. Larsen,* 23 Wn. App. 218, 219, 596 P.2d 1089 (1979). Myles' and Washington's claim to the allegedly stolen gun and purse did not justify their taking the stereo, nor did it justify the threatening tactics to retrieve their belongings. As the court noted in *State v. Larsen, supra* at 219:

> In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self–help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand.

(quoting *State v. Ortiz,* 124 N.J. Super. 189, 192, 305 A.2d

800 (1973)). The defendants were not entitled to a good faith claim of title instruction since there was insufficient evidence to support the proposed instruction.

The defendants' convictions for first degree burglary are affirmed. Washington's case is remanded to the trial court for resentencing without the special verdict.

CORBETT, A.C.J., and SWANSON, J., concur.

Reconsideration denied April 20, 1984.

Review denied by Supreme Court June 22, 1984.