[No. 49578–5.   En Banc.   February 16, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. HECTOR JOSE BELMAREZ, *Petitioner.*

STAFFORD, J., did not participate in the disposition of this case.

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Robert S. Las-*

*nik, Senior Deputy,* for respondent.

UTTER, J.—Hector Belmarez, who was convicted by a jury of first degree murder, appeals the special jury verdict that he was armed with a deadly weapon during the commission of the crime. The special verdict acts to increase the minimum sentence that the Board of Prison Terms and Paroles may set for petitioner. RCW 9.95.015, .040. Petitioner has not challenged the underlying first degree murder conviction.

Ronald Fitzer was stabbed to death outside a tavern in Seattle. Four witnesses testified about the incident. Three of the four witnesses testified that a short black man with a cast on his right arm (later identified as Frank James) and a taller Hispanic man jointly attacked Fitzer, and that the Hispanic man[1] stabbed Fitzer in the chest with a knife that James produced and dropped during the fight. The fourth witness testified that James alone fought Fitzer and stabbed him in the chest while the unarmed Hispanic man stood approximately 20 feet away.[2] Petitioner Belmarez, a Hispanic man, admitted to being present but testified that

---

[1]None of these four witnesses conclusively identified petitioner as the Hispanic man involved in the fight.

[2]On direct examination, Jeffrey Bjorndal testified that the victim fell to the ground after being struck in the chest by the short black man. Verbatim Report of Proceedings, at 47. On cross examination he testified as follows:

Q What did you see happen with the knife?
A As I was at the corner, as I was coming down and turning the corner, seen what was going on, saw a blow to the chest.
Q Who struck that blow?
A The short black guy.
Q The short black guy struck the blow?
A Yes.
Q Did you see the other person, the person that was standing with the paper bag in his hand [petitioner Belmarez], ever have the knife?
A No.
Q Did you see him have any kind of physical contact with the fellow who was killed?
A No.
Verbatim Report of Proceedings, at 51–52.

he intervened only to try to break up the fight between James and Fitzer. Belmarez also testified that he had never seen James with a knife, that he did not see a knife at any time during the fight, and that he neither stabbed nor saw James stab Fitzer.

James pleaded guilty to second degree murder. Belmarez was charged with first degree murder while armed with a deadly weapon, and the case was tried to a jury. The jury was instructed that it could find Belmarez guilty of first degree murder as either a principal or an accomplice on either of two alternative theories, premeditation or felony murder by robbery. For example, instruction 5 stated:

A person commits the crime of murder in the first degree when he or she commits or attempts to commit robbery and in the course of and in furtherance of such crime or in immediate flight from such crime he or she or another participant causes the death of a person other than one of the participants.

The trial court also gave the jury the following instruction:

For the purposes of the special [deadly weapon] verdict, the law provides that if one person is armed with a deadly weapon, all accomplices are deemed to be so armed, even if only one deadly weapon is used in the commission of the crime.

Instruction 16. Petitioner's attorney did not object to this instruction.

The jury found petitioner guilty of first degree murder, without specifying which theory it believed. The jury also entered a special verdict that Belmarez had been armed with a deadly weapon. The trial court sentenced petitioner to life imprisonment.

Petitioner appealed to the Court of Appeals, which set oral argument for October 6, 1982. On November 18, 1982, this court decided *State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982), which held that in order to enhance a defendant's sentence under RCW 9.95.040, the State must prove beyond a reasonable doubt that the defendant was either armed with a deadly weapon or knew that an accomplice

was so armed. On January 31, 1983, the Court of Appeals affirmed petitioner's conviction. On or about February 22, 1983, petitioner filed a motion for reconsideration, raising for the first time the issue of whether the deadly weapon instruction quoted above constituted reversible error. The Court of Appeals denied the motion. We granted Belmarez's petition for discretionary review.

■ Was the deadly weapon instruction erroneous? In *State v. McKim, supra,* this court reversed a special deadly weapon verdict because the jury received an instruction virtually identical to the instruction in the case at bar. There we interpreted the language of RCW 9.95.015

> as requiring a special finding of fact that an accused was either actually armed with a deadly weapon or was constructively armed with such a weapon. The phrase "constructively armed with a deadly weapon" means the accused's accomplice must have been actually armed with a deadly weapon and the accused must have had *knowledge* that the accomplice was so armed.

*McKim,* at 117. We went on to hold that the challenged instruction "amounts to a conclusive presumption that petitioner knew his codefendant was armed at the time of the offense. Clearly, this does not comport with our present holding that such knowledge must be established by the State beyond a reasonable doubt." *McKim,* at 119. The court struck the special verdict and remanded the case for resentencing. *See also State v. Papadopoulos,* 34 Wn. App. 397, 662 P.2d 59 (1983); *State v. Van Pilon,* 32 Wn. App. 944, 651 P.2d 234 (1982).

*McKim* is controlling here, and the special deadly weapon verdict was error.[3]

---

[3] Conclusive presumptions such as the one embodied in the challenged jury instruction are errors of constitutional magnitude. *Sandstrom v. Montana,* 442 U.S. 510, 523–24, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). *See also State v. Riggins,* 34 Wn. App. 463, 466, 662 P.2d 395 (1983); U.S. Const. amend. 14 (due process clause); Const. art. 1, §§ 3, 21, 22 (amend. 10) (due process and jury trial). Constitutional errors may be raised for the first time on appeal. *See State v. McCullum,* 98 Wn.2d 484, 487–88, 656 P.2d 1064 (1983); *State v. Papadopoulos, supra* at 402 n.1 (citing *State v. McKim, supra*).

■ Even if the instruction was erroneously given, was the error harmless? An erroneous jury instruction "'is *presumed to have been prejudicial,* and to furnish ground for reversal, unless it affirmatively appears that it was harmless.'" *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977). Where the instruction was tainted by federal or state constitutional error, the error must be harmless beyond a reasonable doubt. *See, e.g., Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Stephens,* 93 Wn.2d 186, 191, 607 P.2d 304 (1980). Just how to determine whether such an error is harmless beyond a reasonable doubt is not entirely clear, however, since both this court and the United States Supreme Court have vacillated and continue to vacillate between two alternative approaches.[4]

> Under the first approach, the appellate court looks only at the tainted evidence and asks if it might have played a part in (*i.e.,* "contributed to") the fact finder's determination of guilt. The amount and persuasiveness of the untainted evidence is not considered. If the tainted evidence could plausibly have played a part in the conviction, reversal is required.
>
> The theory of the second test is that regardless of how "prejudicial the constitutional error was, a conviction should not be reversed if the case against the defendant was so strong that conviction was inevitable." The appellate court examines the untainted evidence alone and finds the error harmless if the untainted evidence is so overwhelming that it *necessarily* leads to a finding of guilt. If the untainted evidence is merely *sufficient* to support the conviction, reversal is required. In effect, a conviction will be allowed to stand, although a constitutional error did, or could have, played a part in it, if there was other untainted overwhelming evidence which necessarily supported the conviction.

(Citations omitted.) *State v. Evans,* 96 Wn.2d 1, 6–7, 633 P.2d 83 (1981) (Brachtenbach, C.J., concurring).

---

[4]For discussions of the inconsistent Washington cases on this issue, *see State v. Evans,* 96 Wn.2d 1, 5–10, 633 P.2d 83 (1981) (Brachtenbach, C.J., concurring) and *State v. Vargas,* 25 Wn. App. 809, 812–16, 610 P.2d 1 (1980).

The United States Supreme Court appears to be badly split over which approach to follow. In *Connecticut v. Johnson*, 460 U.S. 73, 74 L. Ed. 2d 823, 103 S. Ct. 969 (1983), for example, the Court dealt with a jury instruction that stated "every person is conclusively presumed to intend the natural and necessary consequences of his act.'" 460 U.S. at 78. A 4-judge plurality concluded that, with a few very narrow exceptions, such conclusive presumptions deprive defendants of "'constitutional rights so basic to a fair trial that their infraction can *never* be treated as harmless error.'" (Italics ours.) 460 U.S. at 88 (citing *Chapman v. California, supra* at 23). The plurality reasoned:

> An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence. If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant.

(Footnote omitted.) 460 U.S. at 85–86. Thus, the plurality applied the "contribution" test, and held that conclusive presumptions virtually always "contribute to" the jury's verdict.

Four dissenting Justices[5] also found that "the proper inquiry is whether a court may say 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 460 U.S. at 94–95. However, the dissent then proceeded to apply the "overwhelming evidence" test, and concluded that since the State's evidence was

---

[5]Justice Stevens concurred in the result, stating that the refusal of the Connecticut Supreme Court to make a harmless error determination "does not even raise a federal question. I therefore would simply dismiss the writ of certiorari. Because a fifth vote is necessary to authorize the entry of a Court judgment, however, I join the disposition which will allow the judgment of the Connecticut Supreme Court to stand." (Footnote omitted.) 460 U.S. at 89–90.

uncontradicted,[6] the unconstitutional presumption was unnecessary to the jury's determination of the intent issue. 460 U.S. at 101–02.

We do not find it necessary in the context of this case to adopt either the contribution test or the overwhelming evidence test, since we find that the challenged jury instruction was *not* harmless beyond a reasonable doubt under either test.

The conclusive presumption that petitioner knew that James was armed may have contributed to the special verdict. Under the plurality approach in *Connecticut v. Johnson, supra,* such a presumption could have been harmless error only if Belmarez had admitted that he was armed or knew that James was armed. Belmarez took the stand to expressly deny both allegations. Furthermore, the testimony of one independent witness supported Belmarez's testimony that he had neither stabbed Fitzer nor participated in the fight. Since under the trial court's felony murder and accomplice liability jury instructions the jury could have believed Belmarez's testimony regarding his lack of knowledge of the knife and still convicted him of first degree murder, it cannot be said beyond a reasonable doubt that the conclusive presumption instruction did not contribute to the jury's determination that Belmarez was armed with a deadly weapon.

Nor was the State's admittedly strong evidence so overwhelming that it would *necessarily* lead to a finding that Belmarez was armed or knew that James was armed. One independent witness and Belmarez testified that Belmarez never touched either the knife or the victim, and the jury could have believed them. Although the State contended in oral argument that the evidence could support only one conclusion, we agree with the State's earlier contention that "[t]he evidence presented at trial here *would support* a jury

---

[6]The defendant in that case did not take the stand, and the testimony of his only witness was irrelevant to the defendant's intent. 460 U.S. at 77 n.4 (plurality opinion); 460 U.S. at 99 (Powell, J., dissenting).

finding, beyond a reasonable doubt, that the defendant was armed with a deadly weapon", and that "[t]he jury *could* find . . . that [Belmarez] was armed with a deadly weapon, beyond a reasonable doubt". (Italics ours.) State's Response to Motion To Reconsider, at 6, 8. However, under the overwhelming evidence test, if the "evidence is merely *sufficient* to support the conviction, reversal is required." *State v. Evans, supra* at 7 (Brachtenbach, C.J., concurring). *See also Connecticut v. Johnson,* 460 U.S. at 97 n.5 (Powell, J., dissenting and applying the overwhelming evidence test); *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 160, 60 L. Ed. 2d 777, 99 S. Ct. 2213, 2226 (1979).[7]

The State cites *State v. Davis,* 35 Wn. App. 506, 667 P.2d 1117 (1983); *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981); *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981); and *In re Taylor,* 95 Wn.2d 940, 632 P.2d 56 (1981) as support for its contention that the facts of this case so strongly support a finding that Belmarez himself stabbed Fitzer that the deadly weapon instruction was harmless error. These four cases are inapposite. In *Davis,* the Court of Appeals merely held that "[a]ccomplice liability for the substantive crime need not require such a high level of misconduct [*i.e.,* actual knowledge that a coparticipant is armed] as does sentence enhancement under *McKim.*" *Davis,* at 511. *Claborn* and *Hall,* both pre–*McKim* cases, involved jury instructions that failed to properly explain the State's *burden of proof.* Although neither case turned on whether the defendants knew that their accomplices were armed, the evidence that each was *personally* armed was uncontradicted. *Claborn,* at 633; *Hall,* at 537. Finally,

---

[7]Several recent Washington cases indirectly support the conclusion that the erroneous deadly weapon instruction was not harmless beyond a reasonable doubt under either of the two harmless error standards. In *State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982), for example, this court struck the special deadly weapon verdict and remanded for resentencing after concluding that the relevant jury instruction was erroneous. The court did not bother to expressly consider whether the error might have been harmless. The Court of Appeals followed a similar approach in *State v. Papadopoulos,* 34 Wn. App. 397, 662 P.2d 59 (1983) and *State v. Van Pilon,* 32 Wn. App. 944, 651 P.2d 234 (1982).

although the *Taylor* opinion failed to adequately set forth the facts and relevant jury instruction, it appears that *Taylor,* also a pre–*McKim* case, is inapposite for the same reasons as *Claborn* and *Hall.*

The special verdict as to the deadly weapon penalty enhancement is stricken and the case remanded to the trial court for resentencing without the special verdict.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.