[No. 29288-6-III.   Division Three.   February 2, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO AYALA PONCE, *Appellant*.

*Janet G. Gemberling* (of *Janet Gemberling PS*), for appellant.

*Shawn P. Sant, Prosecuting Attorney*, and *Timothy E. Dickerson, Deputy*, for respondent.

¶1 SIDDOWAY, J. — In *State v. J.P.*, 130 Wn. App. 887, 125 P.3d 215 (2005), this court held that because the statutory defense of abandonment of property negates the unlawful entry element of the crime of criminal trespass, abandonment should be available as a defense to residential burglary, which shares the same element. In this appeal, Antonio Ponce relies on *J.P.* to argue that the trial court erred in refusing to instruct the jury that his defense of permissible entry to the crime of criminal trespass, which similarly negates unlawful entry, was a defense to second degree burglary as well. We agree with Mr. Ponce that he presented sufficient evidence to argue permissible entry. But *J.P.* does not require that a jury be specifically instructed on matters that negate an element of the charged offense if the jury instructions as a whole make clear the State's burden of proving unlawful entry and intent to commit a crime. Here, the instructions did make the State's burden clear, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 At around 9:00 p.m. on an evening in November 2009, Officer Corey Smith of the Pasco Police Department responded to a silent alarm call at Llantera Medina, a tire and mechanic shop owned and operated by the Pedro Medina family. Upon arrival, Officer Smith approached the shop building and noticed a truck parked up against it, only a foot away from a door. He shined his flashlight through a shop window, heard a clang as if a tool had been dropped, and saw Antonio Ponce inside, walking toward him. Mr. Ponce came out of the building through the door behind the truck, squeezed between the truck and the building, and approached the officer. Officer Smith ordered him to the ground, handcuffed him, and placed him in his patrol car. As Mr. Ponce was being led to the car, he blurted out that three other guys had been with him, and had left and gone to some house nearby.

¶3 After other officers circled the building and Officer Smith was satisfied that the scene was secured, he read Mr. Ponce his *Miranda*[1] rights and asked him what he was doing at the shop. Mr. Ponce told the officer he had seen a Honda in front of the shop with a "for sale" sign in the window that evening, had taken a phone number off of it, called the number from a pay phone, and spoke to employees of the shop. He was invited to come to the shop, where he met two employees and a third man. Mr. Ponce said one of the three had a key to the shop, let him in, and told him to wait, after which the three all left and went to a nearby house for some unexplained reason. When questioned about the identity of the employees of the shop, Mr. Ponce told the officer that Jaime Mendez and Joaquyn Villarela were the employees. He told the officer that the third man always carries a handgun and was in the country illegally.

¶4 Officer Smith questioned Mr. Ponce about some large chrome wheels with tires that he had seen outside the shop, near the door and the truck. The officer testified that Mr. Ponce hesitated but then stated they were for a friend of his who was coming by later to pick them up.

¶5 As the officer questioned Mr. Ponce, Jorge Rodriguez, who lived across the street from Llantera Medina, walked by the patrol car, prompting Mr. Ponce to correct his earlier statement and point out Mr. Rodriguez as the neighbor who had let Mr. Ponce into the shop with a key. Mr. Rodriguez turned out to be a former employee of Pedro Medina and a friend of Mr. Medina and his son, but he claimed he had never seen Mr. Ponce before and did not have any keys to the Medina shop. Because the officers were having difficulty reaching Pedro Medina, Mr. Rodriguez drove to the Medina home and brought him back to speak to officers.

¶6 Officer Smith thereafter looked for the Honda described by Mr. Ponce and found one with a for sale sign but with no telephone number indicated. He questioned Mr.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Ponce a second time about how he contacted shop employees to inquire about the car; this time, Mr. Ponce said that he had walked by the shop the day before, spoke to someone who gave him a telephone number, and later called and made arrangements to see the car that night.

¶7 When Mr. Medina arrived and walked through the shop, he pointed out a window that had been broken and that some of his tools were missing. Officers then discovered signs of forced entry. Mr. Medina denied employing anyone named Jaime Mendez or Joaquyn Villarela. Mr. Medina said there was only one set of keys to the business, which he retained and which he never entrusted to anyone but his son.

¶8 Mr. Ponce was charged with second degree burglary under RCW 9A.52.030. At trial, the court also instructed the jury on the lesser included offense of first degree criminal trespass.

¶9 The defense theory advanced at trial, relying on Mr. Ponce's statements to Officer Smith, was that two men identifying themselves as Mr. Mendez and Mr. Villarela led Mr. Ponce to believe that they worked at the shop, let him in, left him there, and told him to wait. Even though the Medinas did not believe anyone else had a key, Mr. Ponce argued that Mr. Rodriguez, being a former employee and friend of the family, would have had the opportunity to take a key and have a copy made. Mr. Ponce pointed to Mr. Rodriguez's prior convictions for possession of stolen property and burglary, conceded by Mr. Rodriguez on cross-examination, as undercutting his credibility. Mr. Ponce argued that single-handedly he could not have removed all of the property that the State argued was outside the building or missing. He suggested that after letting him into the shop, the true burglars—Mendez, Villarela, and Rodriguez—broke a window that they knew would set off an alarm and left Mr. Ponce a "sitting duck," apparently responsible for the burglary. Report of Proceedings (RP) at 273. At a minimum, Mr. Ponce argued, there was reasonable doubt that he was involved.

¶10 For its part, the State conceded that other individuals could have been involved in the burglary. It argued that even so, it had proved beyond a reasonable doubt that Mr. Ponce was one of the participants.

¶11 In proposing jury instructions, Mr. Ponce offered a modified version of the pattern instruction on statutory defenses to criminal trespass, WPIC 19.06,[2] which he had revised to make the defense available not only to the criminal trespass count, but to the second degree burglary charge as well. His proposed instruction read:

> A person has not entered or remained unlawfully in a building if the person reasonably believed that the owner of the premises or other person empowered to license access to the premises would have licensed the defendant to enter or remain.
>
> The State has the burden of proving beyond a reasonable doubt that the trespass was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

Clerk's Papers (CP) at 148.

¶12 The State proposed the pattern jury instruction (WPIC 19.06), which is specifically limited to the charge of criminal trespass. The State's proposed instruction read:

> It is a defense to a charge of criminal trespass in the first degree that: the defendant reasonably believed that the owner of the premises or other person empowered to license access to the premises would have licensed the defendant to enter or remain.
>
> The State has the burden of proving beyond a reasonable doubt that the trespass was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

CP at 170.

---

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 19.06 (3d ed. 2008) (WPIC).

¶13 At the instruction conference, the court, having heard argument from the parties on the import of *J.P.* and *City of Bremerton v. Widell*, 146 Wn.2d 561, 570, 51 P.3d 733, *cert. denied*, 537 U.S. 1007 (2002), agreed with the defense that Officer Smith's testimony as to Mr. Ponce's explanation of his presence—testimony that had come in as substantive evidence—was sufficient to warrant instructing on permissible entry as a defense to the criminal trespass count. But because permissible entry is not recognized by statute as a defense to second degree burglary, the court refused to give Mr. Ponce's proposed instruction. In announcing that it would give the pattern instruction instead, the court observed, "I do not believe the defendant is prejudiced in any way," pointing out that "the defense can still argue in both cases that he was there with the permission of the owner or another person empowered or licensed to give him access to the premises even without that instruction[,] because the State has to prove that his entering or remaining was with intent to commit a crime against a person or property." RP at 237. Mr. Ponce took timely and sufficient exception to the court's refusal to give his requested instruction.

¶14 The jury found Mr. Ponce guilty of second degree burglary. He appeals, assigning error only to the trial court's refusal to give his proposed modified instruction.

## ANALYSIS

### I

¶15 We first address the State's argument that would most easily resolve the appeal: that there was no evidence to warrant giving the instruction even if it would otherwise have been proper under *Widell* and *J.P.*

¶16 Each side is entitled to have the jury instructed on its theory of the case if there is sufficient evidence to support that theory. *State v. Williams*, 132

Wn.2d 248, 259, 937 P.2d 1052 (1997). Yet all jury instructions must be supported by substantial evidence. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). When determining whether the evidence is sufficient, the appellate court must view the evidence in the light most favorable to the party that requested the instruction. *Id.* at 455-56.

¶17 Sufficient evidence was presented at trial which, if believed, would support a permissible entry defense. Officer Smith testified to Mr. Ponce's statement that he entered and remained in the shop at the invitation of two men he believed to be employees, whose names he provided. The officer testified to Mr. Ponce's statement that it was Mr. Rodriguez, a neighbor and former employee, who let him in. In closing argument, Mr. Ponce pointed to his behavior upon Officer Smith's arrival at the shop as circumstantial evidence of his belief that he was permissibly in the shop: he walked directly outside to speak to the officer, responding to all of the officer's questions about his presence. The State is correct that there was substantial countervailing evidence. But when we view the evidence in the light most favorable to Mr. Ponce, it would support instructing the jury that permissible entry would negate the unlawful entry element or, stated differently, was a defense.

II

¶18 The question that remains is whether the trial court's refusal to give the modified instruction requested by Mr. Ponce was reversible error. We review de novo a trial court's refusal to give a requested jury instruction where the refusal is based on a ruling of law. *State v. White*, 137 Wn. App. 227, 230, 152 P.3d 364 (2007) (citing *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998)). We review a refusal based on factual reasons for an abuse of discretion. *Id.* (citing *Walker*, 136 Wn.2d at 771-72). In this

case, the trial court refused to give the instruction because it concluded that it was not required to give the instruction and because the instructions as a whole correctly apprised the jury of the law and enabled the defendant to argue the defense theory.

¶19 In *J.P.*, this court did not hold that a jury must be instructed that the statutory defenses to criminal trespass are also defenses to residential burglary. *J.P.* was a bench trial; at issue was whether abandonment could be argued to the trial court as a defense. The rationale for this court's decision was not that courts can or should engraft a statutory defense that the legislature has applied to one crime onto a different crime, having similar elements. Rather, *J.P.* assessed the implications for the defendant of the Supreme Court's decision in *Widell* that the statutory defenses recognized in *Widell* negate the element of unlawfully entering or remaining at a premises.

¶20 The Washington Supreme Court has identified two ways in which the absence of a defense can be an ingredient, whether or not explicitly stated, of an offense. On the one hand, the statute may reflect a legislative intent to treat absence of a defense as one " 'of the elements included in the definition of the offense.' " *State v. McCullum*, 98 Wn.2d 484, 490, 656 P.2d 1064 (1983) (addressing self-defense as a defense to the crime of murder) (quoting *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)). On the other hand, the defense may be inconsistent with, and thereby " 'negate' " one or more elements of the offense. *Id.* (quoting *State v. Hanton*, 94 Wn.2d 129, 133, 614 P.2d 1280, *cert. denied*, 449 U.S. 1035 (1980)). Either way, the State bears the burden of proving beyond a reasonable doubt the absence of such a defense. *Id.*

¶21 In *Widell*, our Supreme Court determined that the statutory defenses to criminal trespass—including that the defendant "reasonably believed that the owner of the premises, or other person empowered to license access thereto,

would have licensed him or her to enter or remain"—negate the unlawful presence element of the crime and are therefore not affirmative defenses. RCW 9A.52.090(3);[3] 146 Wn.2d at 570 (citing *State v. R.H.*, 86 Wn. App. 807, 812, 939 P.2d 217 (1997)). The significance in *Widell* was that the sufficiency of evidence to sustain the defendant's conviction was reviewed bearing in mind the State's burden to prove that his presence was uninvited.

¶22  In *J.P.*, this court considered a further implication of the court's decision in *Widell*. The unlawful presence element of residential burglary is identical to the unlawful presence element of criminal trespass. This court did no more than recognize that if proof of abandonment of property would negate the unlawful entry element of criminal trespass for due process/burden of proof purposes, as determined in *Widell*, then it must negate the identical unlawful entry element for residential burglary. The conclusion continues to appear inescapable.

¶23  After this court's decision in *J.P.*, Division Two of the Court of Appeals decided *State v. Jensen*, 149 Wn. App. 393, 401, 203 P.3d 393 (2009), in which it held that as with any other statute, where the language of a statutory defense is clear, its plain language is to be applied as written. From that, it concluded that the statutory defenses provided by RCW 9A.52.090 apply only to the charge of criminal trespass. *Jensen* has been characterized by the parties as inconsistent with *J.P.*, but we disagree. We concur with what *Jensen* has to say about the defenses set forth in RCW 9A.52.090. We believe that their explicit identification as defenses to criminal trespass will weigh heavily in a trial court's decision to instruct on them in a criminal trespass case and has no bearing at all on a court's decision to instruct on them in a burglary case. But we do not regard *J.P.* as depending upon RCW 9A.52.090, but instead on the Supreme Court's decision in *Widell* that the defenses iden-

---

[3] We quote the current version of RCW 9A.52.090, which was amended by Laws of 2011, chapter 336, section 374 to make the language gender neutral.

tified in that statute negate matters inherent in the element of unlawful entry, as to which the State bears the burden of proof.

¶24 With that explanation of *J.P.*, we regard Mr. Ponce's appeal as raising a different question: Where a defendant asserts a theory of defense that our Supreme Court has recognized as negating an element of second degree burglary, is he entitled to have the jury instructed on the specific respect in which he contends the State's proof fails?

¶25 Washington cases hold that where sufficient evidence supports a theory of defense, it can be reversible error to refuse to instruct on the theory. *State v. Griffin*, 100 Wn.2d 417, 419-20, 670 P.2d 265 (1983) (refusal to instruct on diminished capacity was reversible error; generalized instruction on criminal intent was not sufficient to apprise the jury of the effect of diminished capacity on intent); *State v. Conklin*, 79 Wn.2d 805, 807-08, 489 P.2d 1130 (1971) (voluntary intoxication defense instruction was required where supported by evidence; instruction that "intent to defraud" was a necessary element was insufficient); *State v. Gilcrist*, 15 Wn. App. 892, 895, 552 P.2d 690 (1976) (error to refuse to instruct on involuntary intoxication defense), *review denied*, 89 Wn.2d 1004 (1977). Yet a specific instruction need not be given when a more general instruction adequately explains the law and enables the parties to argue their theories of the case. *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998).

¶26 What distinguishes the results in these cases is whether the refusal to specifically instruct on a theory of defense would prevent the instructions as a whole from correctly apprising the jury of the law or prevent the defendant from arguing his defense theory. *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984) (without instruction on intoxication defense, jury "was not correctly apprised of the law, and defendants' attorneys were unable to effectively argue their theory"); *State v. Turner*, 16 Wn. App. 292,

555 P.2d 1382 (1976) (when instructions considered as a whole permit a party to argue his theory of the case, then it is not error to refuse to give other requested instructions).

¶27 Here, the court's "to convict" instruction informed the jury that in order to convict, it must find that Mr. Ponce had "entered or remained unlawfully in a building." CP at 125 (Instruction 8). The jury was instructed that the entering or remaining was "with intent to commit a crime against a person or property therein." *Id*. The instructions provided the statutory definition of "enters or remains unlawfully" found at former RCW 9A.52.010(3) (2004), stating, in part, "A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." CP at 126 (Instruction 9).

¶28 The instructions, as a whole, correctly apprised the jury of the law and enabled Mr. Ponce to argue his theory of permissible entry. The court did not abuse its discretion in declining to give the instruction requested by Mr. Ponce.

### III

¶29 Even if we found error or an abuse of discretion, we would agree with the State's alternative argument that any error was harmless. "In order to hold that a jury instruction error was harmless, 'we must conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" *State v. Bashaw*, 169 Wn.2d 133, 147, 234 P.3d 195 (2010) (internal quotation marks omitted) (quoting *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)). In arriving at that conclusion, the reviewing court must thoroughly examine the record. *Brown*, 147 Wn.2d at 341.

¶30 Reviewing the record, what emerges as most significant is that the State never denied its obligation to prove that Mr. Ponce did not reasonably believe he was permitted to be in the shop. During closing argument, the prosecutor

addressed the first element of second degree burglary the State was required to prove—that the defendant entered or remained unlawfully in a building—stating:

> The evidence was clear, ladies and gentlemen, from the testimony of all the witnesses that the defendant did not have permission to be inside that building.

RP at 257. The prosecutor went on to argue the persuasiveness, or lack thereof, of the evidence relevant to permission, including the officer's report of what Mr. Ponce had said when questioned. He did not argue that it would have been unreasonable for Mr. Ponce to rely on an invitation from the mysterious Mr. Mendez and Mr. Villarela but instead that the evidence was inconsistent with Mr. Ponce ever entering the shop through the door. Rather, he argued, "The evidence is consistent with a broken window, someone opening the door from the inside and taking property out." RP at 257.

¶31 Addressing the second element of burglary—that entering or remaining was with the intent to commit a crime—the prosecutor argued:

> What was the defendant's intent when he was in that building? You have to look to both direct and circumstantial evidence here. What was his intent? Was it to buy tires? Was it to buy a car? Was he doing things that were consistent with that explanation?

RP at 257-58. He went on to describe evidence supporting intent to commit a crime.

¶32 Finally, in rebuttal the prosecutor implicitly conceded again that if Mr. Ponce had been invited into the shop to inquire about a Honda, it was not burglary, but argued:

> All I'm asking is that you focus on the elements of the charge: That the defendant entered or remained unlawfully; he either entered unlawfully or remained unlawfully or he did both. *He was caught inside that building without permission.* That is remaining unlawfully. . . .
>
> The intent to commit a crime; did he have an intent to commit the crime? I don't care if you think that he didn't take

the airguns. I don't care if you don't think that he moved that green motorcycle out. *My concern is what do you believe his intent was inside that building? Was it to commit a crime or was it something that was noncriminal?*

RP at 277-78 (emphasis added).

¶33 Given the instructions and argument, we are convinced beyond a reasonable doubt that Mr. Ponce's requested instruction would not have made a difference in this case.

¶34 We affirm.

SWEENEY and BROWN, JJ., concur.

Reconsideration denied March 26, 2012.