## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| STATE OF WASHINGTON, | No. 46540-0-II |
| --- | --- |
| Respondent, | |
| v. | |
| CHAD COLTON BASS, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. − Chad Bass appeals his convictions of second degree burglary, third degree theft, and first degree trafficking in stolen property relating to his removal of wire from a vacant house. We hold that (1) the evidence was sufficient to support these convictions even though the house's former occupant gave him permission to remove recyclables from the house, (2) the trial court erred in refusing to give Bass's proposed jury instructions on the inferior degree offense of second degree trafficking in stolen property because there was evidence that Bass acted recklessly and not intentionally, and (3) the trial court did not err in refusing to give Bass's proposed jury instruction on abandonment of the house. Accordingly, we affirm Bass's convictions for second degree burglary and third degree theft, but reverse his conviction for first degree trafficking in stolen property and remand for a new trial on that charge.

FACTS

On December 19, 2013, Peter Steockler, a city of Centralia employee, investigated a residential power meter that had gone off line in the middle of the night. He found a live service wire from a power pole and wire missing between it and the adjacent residence. The city installed and owns the service wire. Burns and markings on the end of the wire suggested that

someone had cut the wire with a hatchet or machete.   Steockler contacted the police and a local recycler.

Two days later, the recycler called Steockler to tell him that someone had brought in wire similar to that missing from the residence.  Steockler was able to match a sample end of wire he had taken from the residence with wire that had been brought into the recycler.  The recycler identified Bass as the person who brought in the wire and explained that Bass had been bringing in wire regularly from a place Bass was cleaning up.  The recycler said that Bass used his real name and address and spoke freely about where he was getting the wire.

Lewis County Sheriff's Deputy Brady Taylor investigated.  He went to the residence Steockler identified and noted that one of the doors had a realtor's key box.  Another door was ajar, so he went into the residence.  He saw that sheetrock and insulation had been torn from the walls and the wiring was missing.

Taylor met with Bass the next day, and Bass admitted that he went into the house and removed the wiring.  Bass told Taylor that David Boss, the house's owner, had given him permission to take the wire in June 2013 before he moved away.  The State charged Bass with second degree burglary, third degree theft, and first degree trafficking in stolen property.

At trial, Taylor confirmed that Bass told him that he removed the wire because he had received permission from Boss.  Taylor testified that Bass told him that Boss said he could take whatever he wanted from the house because "they" were taking the house.  Report of Proceedings (RP) (June 5, 2014) at 81.  Taylor asked Bass if he knew who owned the property now and Bass responded, "'No, probably a bank. . . .  I have no idea.  Like I said, I was stupid.'"

2

RP (June 5, 2014) at 106. Bass also told Taylor that he had "'screwed up.'" RP (June 5, 2014) at 98. Finally, Bass admitted that he cut the power line to the house with a machete at 3:00 AM.

The State also presented evidence that Northwest Trustee Services, Inc. had foreclosed on Boss's house on July 23, 2013. There was no evidence that Bass had specific knowledge of this fact.

Bass testified on his own behalf. He emphasized that he did not think that he was doing anything wrong because Boss, the original house owner, had given him permission to remove recyclables from the house. Bass stated that Boss gave him permission in June 2013, when Boss moved out of the house. Bass admitted that this permission five or six months before he was arrested was the reason he took the property. He also admitted that nobody gave him permission in December 2013 to remove the wiring.

Regarding ownership of the house, Bass testified that he thought that Boss owned the wire in the house that he was cutting. He admitted that he had not seen Boss since he moved out on June 2, 2013. Nevertheless, he was acting under the assumption that Boss still owned the house. He also was not aware when he cut the power line to the house that Boss might not own that line. Bass did not see any signs indicating that a bank might own the house. He explained that he told Taylor that a bank probably owned the house only after Taylor told him that Boss no longer owned the house.

Bass testified that he thought Boss still owned the house even though he had been gone for six months because of the condition of the property. He said the place was a dump. The house and yard were full of animal carcasses, garbage, and dog feces, and the interior walls were

3

covered with black mold. In addition, the ceiling was falling out and the floors were rotting through.

Jeffrey Wallis lived across from the residence. He testified the residence was covered in litter, animal feces, and junk. He also testified that the first time he saw a real estate sign was in January or February 2014, after the residence had been demolished.

Bass proposed instructions on second degree trafficking in stolen property, an inferior degree offense of the charged crime of first degree trafficking in stolen property. The trial court rejected these instructions, ruling that Bass's conduct was intentional and not reckless.

The trial court instructed the jury on first degree criminal trespass, which is a lesser included offense of the charged crime of second degree burglary. Bass proposed an instruction that it is a defense to the crime of criminal trespass that the building involved in the offense was abandoned. The trial court rejected this instruction, ruling that there was no evidence to support it.

The jury found Bass guilty of the charged offenses. He appeals.

## ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Bass argues that the State presented insufficient evidence to convict him of second degree burglary, third degree theft, and first degree trafficking in stolen property because Boss gave him permission to enter the house and remove recyclables. We disagree.

1.   Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id*. at 106. Credibility determinations are made by the trier of fact and are not subject to our review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

2.   Second Degree Burglary

To convict Bass of second degree burglary, the State needed to prove that Bass between December 16 and 20, 2013 entered or remained unlawfully in a building or a dwelling with intent to commit a crime against a person or property therein. RCW 9A.52.030.

Bass argues that there was insufficient evidence of second degree burglary because there was uncontroverted evidence that Boss gave him permission to enter the house and remove anything he wanted. Bass points out that permission to enter a building negates the unlawful entry element of burglary. *See State v. Ponce*, 166 Wn. App. 409, 416-17, 269 P.3d 408 (2012) (holding that the trial court did not err in refusing to give permissive entry instruction when other instructions adequately informed the jury of the applicable law and allowed the defendant to argue his theory of the case).

However, Boss gave Bass permission to enter the house in June 2013, as he was moving out. Bass was charged with burglary for his conduct in December 2013. The State presented

evidence that a bank foreclosed on the house in July and that in December Bass admitted that the bank probably owned the house. Bass also admitted that no one gave him permission between December 16 and 20, 2013, to go into the house and remove the wiring. Finally, Bass stated that Boss gave him permission to remove materials from the house because "they" were taking it. RP (June 5, 2014) at 81. The jury could infer from this evidence that Bass knew that someone other than Boss owned the house by December 2013.

Viewed in the light most favorable to the State, this evidence supports a finding that Bass knew in December 2013 that he no longer had permission from the current owner to enter the house. Accordingly, we hold that the State presented sufficient evidence for the jury to conclude that Bass committed second degree burglary in December.

3.   Third Degree Theft/First Degree Trafficking in Stolen Property

To convict Bass of third degree theft, the State had to prove beyond a reasonable doubt that Bass wrongfully obtained or exerted unauthorized control over the property of another not exceeding $750 in value between December 16 and 20, 2013, with the intent to deprive that person of such property. RCW 9A.56.020(1), .050.

To convict Bass of first degree trafficking in stolen property, the State had to prove beyond a reasonable doubt that Bass knowingly initiated, organized, planned, financed, directed, managed or supervised the theft of property for sale to others, or knowingly trafficked in stolen property between December 16 and 20, 2013. RCW 9A.82.050. "Traffic" means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy,

receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person. RCW 9A.82.010(19).

Bass argues that there was insufficient evidence of both third degree theft and first degree trafficking in stolen property because there was uncontroverted evidence that Boss gave him permission to remove all the recyclables from the house, and therefore he did not steal the wiring he removed. Bass asserts the statutory affirmative defense that he appropriated the property "openly and avowedly under a claim of title made in good faith, even though the claim be untenable." RCW 9A.56.020(2)(a). Bass argues that the State did not meet its burden of disproving this defense by proving beyond a reasonable doubt that he did not take the property openly and avowedly under a good faith claim of title.

However, as stated above the State presented evidence that although Bass may have received initial permission to remove recyclables from Boss, by December 2013, Bass knew that someone else owned the property. Further, the State presented evidence that Bass told Taylor that he had "screwed up," which a jury could find demonstrated an awareness that he had unlawfully removed the wiring. RP (June 5, 2014) at 98. Finally, Bass's act of climbing up on the roof at 3:00 AM to chop the live power line from the house with a machete indicates surreptitious behavior from which a jury could conclude that Bass knew that he was taking someone else's property.

Viewed in the light most favorable to the State, this evidence supports a finding that Bass knew in December 2013 that he no longer had permission from the house's owner to remove the wiring from the house. The evidence is undisputed that Bass removed the wiring and sold it.

Accordingly, we hold that the State presented sufficient evidence for the jury to conclude that

Bass committed third degree theft and first degree trafficking in stolen property in December.

B.        INFERIOR DEGREE OFFENSE JURY INSTRUCTIONS

Bass argues that the trial court erred in refusing to give Bass's proposed jury instructions

on second degree trafficking in stolen property, which is an inferior degree offense of the

charged crime of first degree trafficking in stolen property.  We agree.

1.    Legal Principles

In general, we review a trial court's choice of jury instructions for an abuse of discretion.

*State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011).  Jury instructions are

appropriate if they allow counsel to argue their theories of the case, are not misleading, and when

read as a whole properly state the applicable law.  *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229

P.3d 669 (2010).  However, a defendant is entitled to an instruction regarding his or her theory of

the case if there is evidence to support the theory.  *State v. Werner*, 170 Wn.2d 333, 336, 241

P.3d 410 (2010).  The trial court's refusal to give an appropriate instruction is reversible error if

the absence of the instruction prevents the defendant from arguing his or her case.  *State v.*

*Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010).

RCW 10.61.003 provides that a jury may find a defendant not guilty of the charged

offense but guilty of an offense with an inferior degree.  Under this statute, both parties have a

statutory right to an inferior degree offense instruction.  *State v. Corey*, 181 Wn. App. 272, 276,

325 P.3d 250, *review denied*, 181 Wn.2d 1008 (2014).  The party requesting an instruction on an

inferior degree offense must show

"(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

The third requirement is the factual component of the test. When determining whether the evidence was sufficient to support an inferior degree offense instruction, we view the evidence in the light most favorable to the party that requested the instruction. *Id.* at 455-56. In addition, we must consider all the evidence presented at trial, not just the defendant's testimony. *Id.* at 456. A jury instruction on an inferior degree offense should be given if the evidence would permit the jury rationally to acquit on the greater offense and convict on the inferior defense. *Id.* However, the evidence must affirmatively establish the defendant's theory of the case, not merely allow the jury to disbelieve evidence of guilt. *Id.*

2.   Factual Analysis

Here, the parties agree that the first two requirements of the test for giving an inferior degree offense instruction are satisfied. Second degree trafficking in stolen property is an inferior degree offense to first degree trafficking in stolen property. RCW 9A.82.050, .055; *Fernandez-Medina*, 141 Wn.2d at 454-55. The only question involves the factual prong – whether there is evidence that Bass committed only the inferior offense of second degree trafficking in stolen property.

The difference between the two degrees of trafficking in stolen property is the mens rea. First degree trafficking requires the State to prove that the defendant *knowingly* trafficked in

stolen property. Second degree trafficking requires the State to prove that the defendant *recklessly* trafficked in stolen property. "A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). This definition contains both a subjective and an objective knowledge component. *State v. Hovig*, 149 Wn. App. 1, 9, 202 P.3d 318 (2009). Determining whether a defendant acted recklessly depends on what that defendant knew and how a reasonable person would have acted knowing the same facts. *Id.*

Here, there is evidence in the record that Bass acted recklessly instead of intentionally, and therefore committed only the inferior degree offense of second degree trafficking in stolen property. According to Bass, he thought that Boss still owned the home and his removal of the wire was permissive. However, he admitted that he received the permission six months before his activities in December 2013 and that he had not seen Boss since then. He also admitted that he did not really know who owned the house and that he was stupid for removing the wire.

Based on this evidence and other evidence presented at trial, a jury could infer that (1) Bass initially had permission from Boss, the house owner; (2) Bass did not know that a bank owned the house by December 2013 and therefore had no intent to steal the wiring, and (3) Bass was reckless in assuming that Boss was still the owner and his permission remained valid after Boss moved out of the house and had not been seen for six months. As a result, the evidence was sufficient to support an inferior degree offense jury instruction.

We hold that the trial court erred in refusing to give Bass's proposed jury instructions on second degree trafficking in stolen property. Accordingly, we reverse Bass's conviction for first degree trafficking in stolen property and remand for a new trial of that charge.

## C.     ABANDONMENT JURY INSTRUCTION

The trial court instructed the jury on first degree criminal trespass, which is a lesser included offense of the charged crime of second degree burglary. Bass argues that the trial court erred in refusing to give a jury instruction stating that abandonment of the house entered is a defense to first degree criminal trespass. We hold that even if the trial court erred in refusing to give an abandonment instruction, that error was harmless because the jury never considered whether Bass was guilty of first degree criminal trespass.

Abandonment is a statutory defense to first degree criminal trespass. RCW 9A.52.090(1). However, the abandonment defense does not apply to second degree burglary. *State v. Jensen*, 149 Wn. App. 393, 400-01, 203 P.3d 393 (2009).

Here, the trial court instructed the jury that it could consider first degree criminal trespass only if it found that Bass was not guilty of second degree burglary. The jury did find Bass guilty of second degree burglary. Therefore, under the court's instruction, the jury could not consider first degree criminal trespass. We presume the jury followed this instruction. *State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011). Therefore, whether abandonment was a defense to first degree criminal trespass was immaterial.

We hold that even if the trial court erred in refusing to give an abandonment instruction, that error was harmless because the jury never considered first degree criminal trespass.

11

No. 46540-0-II

We affirm Bass's convictions for second degree burglary and third degree theft, but reverse his conviction for first degree trafficking in stolen property and remand for a new trial on that charge.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, J.

JOHANSON, C.J.