IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36057-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL ANTHONY CARSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A task force established to address sexually exploited children stung Paul Carson. On appeal from a conviction of attempted rape of a minor, Carson contends the task force entrapped him. Because the evidence indisputably establishes Carson's predisposition to the criminal act, we reject Carson's appeal.

FACTS

The Washington State Patrol's (WSP) Missing and Exploited Children's Task Force operated a sting operation known as "Net Nanny." On December 14, 2015, as part of the operation, WSP Detective Carlos Rodriguez posed as a mother offering her minor children for sex. Rodriguez posted an advertisement on Craigslist that read: "'[y]oung family fun, no RP.'" "RP" means role play. "'Let's meet. Woman for man/woman in Tacoma. Looking for a crazy fun time. Only serious need respond. No solicitations.

Single mom with two daus and one son.'"  Report of Proceedings (RP) at 215.  "W" is short for "woman," "m" short for "man," and 4 short for "for."  "Daus" means daughters.

Paul Carson responded to the Craigslist advertisement two hours after its posting and engaged in a conversation with Detective Carlos Rodriguez, by text and e-mail, over the course of two days.  Rodriguez cleverly posed questions and sent comments so as to forestall a defense that Carson only engaged in game playing.  The fictitious mother's 11-year-old daughter, Lisa, served as the main topic of discussion.  Carson sent fifty-six communications with the ersatz mother responding in kind.

Some of the communications read:

> WSP:  Hey.  So tell me what you want, hon.
> Carson:  Ideally, I would want all of you.  What else would you like to know?
> WSP:  So all three kids and me?
> Carson:  Eventually, yes.  And yourself.  Isn't that what you want?
> WSP:  This is more for my kids.  So if you are just trying to hook up with me, this isn't for you.
> Carson:  You wouldn't be interested in participating?
> WSP:  I watch.  And if I get excited, then I can join if the situation is right.
> Carson:  Absolutely.  And ideally, it's what I would like.
> WSP:  Well, like I said, it's more for them.  So if you just want me, this is the wrong ad to answer.
> Carson:  Let's get past that, as I can.  We can deal with this as it arises.  Okay?
> WSP:  Sorry.  If you aren't willing to help me with teaching my girls and possibly my son, then this isn't for you.
> Carson:  I am absolutely willing to help with that.
> . . . .
> WSP:  What do you want that's specific?

2

Carson: I'm hoping with your guidance we can make her a big girl tonight.

WSP: I will be there watching for sure. We are excited.

Carson: I'm kind of hoping that I f*** her. There. I've said it.

. . . .

WSP: Let me know what time. We will be waiting. You sound so sweet.

Carson: Give me an idea where you live. I'm thinking 5:30 to 6:00.

WSP: This is the 76 near my house, Kira 76 1901 South K Street, Tacoma, Washington 98405. I'll give you directions from there. Text me when you are close so I can get them all clean unless you want them dirty.

. . . .

Carson [later]: I'm at the 76 station.

WSP: K. Did you bring the condoms? If not, they have them there. Can you take a call? I'll give you directions.

Carson: I'm going to go buy them right now.

*See* RP at 253-73.

Detective Carlos Rodriguez, still posing as the fictional mother, texted Paul Carson an address for the mother's residence. Other detectives involved in the sting operation, including a female detective ready to play the protagonist of mother, dallied at the residence. The female officer cordially greeted Carson at the door when he arrived. She instructed Carson to remove his shoes while she retrieved Lisa. Lurking officers inside the house recognized the word "Lisa" as a cue and arrested Carson.

PROCEDURE

The State of Washington charged Paul Carson with attempted rape of a child in the first degree. Paul Carson defended on the theory that he merely occupied in sexual role playing and never intended to engage in sex with a minor.

At trial, Paul Carson testified to a practice of participating in game play and communicating on fetish websites. Carson conceded that his communications with the fictitious mother, from the "mother's" perspective, did not entail role play, but he maintained that, as part of his role playing, he needed to express his desire for a youngster. Carson averred that he enjoyed "daddy/daughter" pretending and that he previously engaged in such game playing with adult women who pretended to be twelve, thirteen, and fourteen years of age. RP at 350.

At the close of testimony, Paul Carson requested an entrapment jury instruction. Because Carson continued to deny any intent to have sex with a child, the trial court denied the instruction. The court reasoned that Carson needed to present evidence that he intended to engage in sexual activity with a minor. Thereafter, the jury found Carson guilty.

At sentencing, Paul Carson requested the court impose an exceptional sentence downward based on the mitigating factors of possessing a low risk to reoffend, a fictitious victim, and being induced by others to participate in a crime. Carson requested an exceptional sentence of twenty-four months' confinement. The standard range for the conviction and Carson's history was sixty-nine months to ninety-two months. The State resisted an exceptional sentence downward and requested ninety-two months' confinement.

The sentencing court rejected Paul Carson's request for a downward deviation

from the standard range and sentenced him to a minimum eighty-five months

indeterminate sentence, approximately the midpoint of the standard range. The court

emphasized that Carson genuinely desired to engage in sex with three children. His

behavior showed he had a predisposition to such conduct and law enforcement did not

entrap him. The sentencing court did not conclude Carson to be a low risk to offend.

The court found the absence of any extenuating circumstances.

LAW AND ANALYSIS

On appeal, Paul Carson assigns three errors to the trial court proceedings. First,

insufficient evidence supported his conviction. Second, the trial court erred when

rejecting an entrapment jury instruction. Third, the trial court erred in denying an

exceptional sentence below the standard range. We address the assignments in such

order and reject each.

Sufficiency of Evidence

In determining the sufficiency of the evidence, this court views the evidence in the

light most favorable to the State and determines whether any rational trier of fact could

have found the elements of the crime beyond a reasonable doubt. *State v. Townsend*, 147

Wn.2d 666, 679, 57 P.3d 255 (2002). A defendant claiming insufficiency of the evidence

admits the truth of the State's evidence and all inferences reasonably drawn therefrom.

*State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct

evidence are equally reliable in determining the sufficiency of evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

Evidence suffices to support a conviction of attempted rape of a child in the first degree when the State proves beyond a reasonable doubt that the defendant took a substantial step toward having sexual intercourse with a child less than twelve years old and not married to the defendant and when the defendant is at least twenty-four months older than the victim. RCW 9A.28.020; RCW 9A.44.073. The intent required for attempted rape of a child is the intent to accomplish the criminal result: to have sexual intercourse. *State v. Chhom*, 128 Wn.2d 739, 743, 911 P.2d 1014 (1996). A substantial step is conduct that strongly corroborates the actor's criminal purpose. *State v. Townsend*, 147 Wn.2d at 679. Mere preparation to commit a crime is not a substantial step.

In *State v. Wilson*, 158 Wn. App. 305, 308, 242 P.3d 19 (2010), an undercover detective posed as a mother and posted an ad on Craigslist offering sex with her and her daughter. Rodney Wilson responded, exchanged photos, and agreed to oral sex with the thirteen-year-old daughter in exchange for $300. On the day scheduled for the meeting, Wilson drove to Dick's Drive-in near the child's house. He waited in his car for approximately thirty minutes before being arrested. On appeal, Wilson argued that insufficient evidence supported his conviction of attempted rape of a child in the second degree. He asserted that the evidence showed mere preparation, not a substantial step,

since he only drove to a public location and sat in his vehicle. This court disagreed and found Wilson took a substantial step toward commission of the crime when he exchanged photos with the fictitious mother, obtained the mother's address, and drove to the designated location with money he agreed to pay for sex.

In *State v. Townsend*, 147 Wn.2d 666 (2002), Donald Townsend communicated via e-mail and instant messenger with a person he believed to be a thirteen-year-old girl. Townsend told the teenager he desired sex with her, and the two planned to encounter at a hotel. When Townsend knocked at the hotel room and asked for the girl, a detective arrested him. This court held that the defendant took a substantial step because his actions indicated he intended to have sexual intercourse with the child.

The evidence against Paul Carson holds as strong, if not stronger, than the evidence against Donald Townsend and Rodney Wilson. Carson exchanged photos with the fictitious mother, he obtained her address after following directions to a gas station, and he arrived at the address with a carton of condoms. Carson exited his car, knocked at the door, stepped inside, and took off his shoes. These actions were all taken after Carson explicitly stated he hoped to "f***" 11-year-old Lisa and make her a "big girl." These actions exceeded mere preparation and qualified as substantial steps.

Entrapment

Paul Carson assigns error to the trial court's denial of his request for an entrapment jury instruction. Carson argues the court erred by finding he needed to admit

7

that he intended to have intercourse with a child the day he arrived at the bait house before the instruction could be given. In turn, he asserts that sending his message that he wanted to "f***" sufficed as an admission despite his contention he only engaged in fantastical play. We do not address this contention because we may affirm the trial court on other grounds. As contended by the State, the evidence fails to support a defense of entrapment.

This court reviews de novo a trial court's refusal to give a requested jury instruction when the refusal is based on a ruling of law. *State v. Ponce*, 166 Wn. App. 409, 416, 269 P.3d 408 (2012). A party is entitled to have the jury instructed on its theory of the case if sufficient evidence supports the theory. *State v. Ponce*, 166 Wn. App. at 415-16. Jury instructions must be supported by substantial evidence. *State v. Ponce*, 166 Wn. App. at 416. Substantial evidence exists when sufficient evidence in the record could persuade a fair-minded, rational person that the accused established the defense. When determining whether the evidence suffices, this court must view the evidence in the light most favorable to the party that requested the instruction. *State v. Ponce*, 166 Wn. App. at 416.

For entrapment to exist, the evidence must show that the defendant lacked the predisposition to commit the crime. *State v. Pleasant*, 38 Wn. App. 78, 80, 684 P.2d 761 (1984). This means the defendant must not have any preexisting intent, inclination, or tendency toward its commission. *State v. Walker*, 11 Wn. App. 84, 88, 521 P.2d 215

8

(1974). Many kinds of evidence can be used to prove predisposition, including: ready

compliance with an illegal request, acts showing eagerness to commit the crime, and

substantial effort in investigating and arranging an illegal transaction. *State v. Pleasant*,

38 Wn. App. at 81; *State v. Enriquez*, 45 Wn. App. 580, 586, 725 P.2d 1384 (1986); *State*

*v. Trujillo*, 75 Wn. App. 913, 919, 883 P.2d 329 (1994). Even though a criminal design

originates in a police officer's mind, if the defendant willingly participates in a

developing transaction, entrapment does not occur. *State v. Galisia*, 63 Wn. App. 833,

838, 822 P.2d 303 (1992), *abrogated on other grounds by State v. Trujillo*, 75 Wn. App.

913.

Paul Carson presented insufficient evidence to support a finding of entrapment.

Carson did not and could not show a lack of predisposition to commit the crime. The

evidence regarding Carson's actions showed an eagerness to commit the crime. The

evidence also showed substantial effort on Carson's part in arranging the illegal act.

Paul Carson continued chatting with the fictitious mother after the mother

repeatedly declared that she sought no role playing. Carson admitted the

communications did not presuppose role playing. Carson told the mother he wanted to

make the eleven-year-old child a "big girl" and explicitly stated that he hoped to "f***"

the child. Carson continuously corresponded with the ersatz mother over the course of

three days by e-mail, text messaging, and telephone calls. Carson drove forty-five miles

from Olympia to Tacoma to arrive at the child's house. Carson showed his persistence

9

by following the mother's directions to first drive to a gas station before the mother would provide the home address that Carson needed to reach the home. Carson then arrived at the lure house with condoms. Even if the criminal design originated in an officer's mind, Carson willingly participated in the developing scheme. Thus, Carson did not meet his burden of showing that he would be entitled to an entrapment instruction.

Sentence

Paul Carson challenges the trial court's refusal to grant an exceptional sentence downward as an abuse of discretion. In so arguing, he continues to contend law enforcement entrapped him to engage in criminal behavior. He contends that the court sentenced him to the same sentence that one who actually raped a child would receive.

The sentencing court meted a sentence within Paul Carson's standard range. Generally, a defendant cannot appeal a standard range sentence. RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). This rule arises from the notion that, so long as the sentence falls within the proper presumptive sentencing ranges set by the legislature, no abuse of discretion follows as a matter of law as to the sentence's length. *State v. Williams*, 149 Wn.2d at 146-47. This standard, however, is not an absolute prohibition of the right to appeal. *State v. Khanteechit*, 101 Wn. App. 137, 138, 5 P.3d 727 (2000).

When a defendant requests an exceptional sentence below the standard range, we limit our review to circumstances when the trial court refused to exercise discretion at all

10

or relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances such as taking the position that it will never impose a sentence below the standard range. *State v. Garcia-Martinez*, 88 Wn. App. at 330. A court relies on an impermissible basis for declining to impose an exceptional sentence below the standard range if, for example, it takes the position that no drug dealer should get an exceptional sentence downward or it refuses to consider the request because of the defendant's race, sex, or religion. *State v. Garcia-Martinez*, 88 Wn. App. at 330. Yet, even in these instances, the defendant may challenge the refusal to exercise discretion or the impermissible basis for the refusal, not the substance of the decision about the length of the sentence. *State v. Garcia-Martinez*, 88 Wn. App. at 330.

In *State v. Cole*, 117 Wn. App. 870, 73 P.3d 411 (2003), the defendant unsuccessfully requested a below range sentence and later, on appeal, challenged the court's refusal to impose an exceptional sentence. The court held the defendant could not appeal from a standard range sentence when the trial court considered the defendant's request for the application of a mitigating factor, heard extensive argument on the subject, and then exercised its discretion by denying the request. *State v. Cole*, 117 Wn. App. at 881.

Paul Carson's sentencing court listened to extensive argument before imposing a standard sentence. Nevertheless, the court rejected the request for an exceptional sentence for sound reasons, including Carson's determination to commit the heinous wrongful act. The court also rejected his characterization of himself as the victim of entrapment. Carson claims that he received the same sentence as one who actually raped a child, but he does not forward any citations to support this contention.

Paul Carson essentially argues that the trial court should have imposed a shorter sentence. Carson may not appeal the sentence, however, since it fell within the standard range sentence.

## CONCLUSION

We affirm Paul Carson's conviction and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, C.J.

12