**FILED**
**FEBRUARY 26, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35907-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WALTER BYARD MARTIN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Walter Martin appeals his Spokane County conviction for

second degree theft. He contends the trial court erred by refusing to give a jury

instruction on the defense of good faith claim of title. He also assigns error to the court's

imposition of a $200 filing fee and $100 DNA collection fee. We affirm the conviction

but remand for the trial court to strike the challenged fees.

FACTS

The State charged Mr. Martin with residential burglary and second degree theft, stemming from an incident in August 2017, when William Brown's bicycle was removed from his residence in Spokane Valley. The facts are taken from the trial testimony.

Mr. Martin has a brother, Mike Martin,[1] who is friends with Candace and William Brown. The Browns knew Mr. Martin through Mike. In 2015, Mr. Brown went bike riding several times with the Martin brothers. At that time, Mr. Martin owned a white Allay road bike that he gave to Mr. Brown because he no longer wanted it.

On or about February 28, 2016, Mr. Brown decided to purchase a new blue Trek Diamante road bike for approximately $1,900. The Trek bike had disc brakes and was made of carbon fiber, in contrast to the Allay bike Mr. Brown received from Mr. Martin, which had caliper brakes and was made of aluminum.

After purchasing the Trek bike, Mr. Brown sold the Allay bike to a third party for approximately $150 to $250. Mr. Brown subsequently received some telephone messages from Mr. Martin indicating Mr. Martin wanted money for the Allay bike. According to Mr. Brown, he told Mike to give Mr. Martin $150 and that he would reimburse Mike.

---

[1] To avoid confusion, Mike Martin will be referred to by his first name. No disrespect is intended by doing so.

However, Mr. Martin never collected the money from Mike. Mr. Brown further testified that other than the telephone messages, he had no contact with Mr. Martin during the period between when they went bike riding in 2015 and the August 2017 incident at issue here.

In the summer of 2017, Mr. Brown's uncle, Ronald Wilmot, was residing with the Browns. Candace Brown was the official caretaker for Mr. Wilmot, who cannot communicate well and has a poor memory. On August 4, 2017, Mrs. Brown left Mr. Wilmot home alone while she ran errands. When Mrs. Brown returned home around 2:00 p.m., she noticed the front screen door of the residence was not opening properly. Inside the residence, she found a note on the coffee table that read:

> Billy Tangle Ass, LOL, hey, big brother, this is Walt. But, anyway, Brother Mike has a great job opportunity for me and told me to get out there. It's by state line. Walking so I stopped to grab my bike real quick and will drop it back off when you get home. Thanks, Bill, big brother. See you around eight or seven more like it. Ron [Wilmot] seems great. Is always nice to see him. Might have my phone back on in about an hour . . . . K.

Report of Proceedings (Dec. 18, 2017) at 141.[2]

After reading the note, Mrs. Brown noticed that her husband's Trek bike was gone. She called her husband, who then called the police after he unsuccessfully attempted to

---

[2] Mr. Martin commonly used "big brother" as a moniker for Mr. Brown. *Id.*

3

contact Mr. Martin. The deputy who responded to the call located Mr. Martin and the

bike after speaking with Mike. At the time of his arrest, Mr. Martin told the deputy that

Mr. Wilmot let him into the Browns' house. He also claimed that he did not have time to

ask the Browns if he could take the bike, and asserted that the bike was his.

At the December 2017 trial, Mr. Martin requested a jury instruction on the

"good faith claim of title" defense, consistent with criminal pattern jury instruction

19.08.[3] Mr. Martin argued that: (1) the note he left and his comments to the arresting

officer showed his subjective belief that the bike was his, and (2) the testimony

concerning the white Allay bike transaction supported an inference that Mr. Martin

mistakenly believed the bike he took was the same one he gave to Mr. Brown two years

prior. The trial court refused to give the instruction after determining there was no

objective evidence to support Mr. Martin's subjective belief that the blue Trek bike was

his former bike.

The jury acquitted Mr. Martin of residential burglary and the lesser included

offense of criminal trespass, but convicted him of second degree theft. The trial court

imposed an exceptional sentence downward of 11 months, and ordered Mr. Martin to pay

---

[3] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 19.08, at 341 (4th ed. 2016).

legal financial obligations (LFOs) totaling $800, including a $200 criminal filing fee and a $100 DNA (deoxyribonucleic acid) fee. Mr. Martin timely appeals.

ANALYSIS

Mr. Martin contends the trial court abused its discretion by refusing to give the requested instruction on a defense of good faith claim of title. While the appeal was pending, Mr. Martin filed a supplemental brief asking this court to reverse the trial court's imposition of the $200 criminal filing fee and $100 DNA fee.

This court reviews a trial court's refusal to give a requested jury instruction de novo where the refusal is based on a ruling of law, and for abuse of discretion where the refusal is based on factual reasons. *State v. Ayala Ponce*, 166 Wn. App. 409, 416, 269 P.3d 408 (2012). In this case, the trial court refused to give the instruction because it concluded there was insufficient evidence supporting a good faith belief that the bike belonged to Mr. Martin.

A party is entitled to have the jury instructed on its theory of the case if sufficient evidence supports the theory. *Ponce*, 166 Wn. App. at 415-16. The failure to give an instruction where the evidence supports the instruction is reversible error. *See e.g.*, *State v. Pestrin*, 43 Wn. App. 705, 710, 719 P.2d 137 (1986). When determining whether the

evidence suffices, this court must view the evidence in the light most favorable to the party that requested the instruction. *Ponce*, 166 Wn. App. at 416.

The State charged Mr. Martin pursuant to RCW 9A.56.040(1)(a) with second degree theft, which states in relevant part that "a person is guilty of theft in the second degree if he or she commits theft of . . . [p]roperty or services which exceed(s) seven hundred fifty dollars in value but does not exceed five thousand dollars in value." RCW 9A.56.020(1)(a) defines "theft" as "[t]o wrongfully obtain or exert unauthorized control over the property or services of anther or the value thereof, with intent to deprive him or her of such property or services."

It is a defense to theft that "[t]he property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable." RCW 9A.56.020(2)(a). A defendant is only entitled to this instruction if he or she presents evidence of (1) an open and avowed taking of property, and (2) a legal or factual basis upon which the defendant, in good faith, based a claim of title to the property. *State v. Chase*, 134 Wn. App. 792, 803-04, 142 P.3d 630 (2006) (citing *State v. Ager*, 128 Wn.2d 85, 95, 904 P.2d 715 (1995). There must be evidence other than a defendant's subjective beliefs—the defendant must demonstrate objective evidence to support his or her assertions of a good faith claim of title. *Chase*, 134 Wn. App. at 805-06.

Moreover, a defense of good faith claim of title applies only when the defendant can assert a claim of title to the specific property acquired. *See e.g.*, *State v. Brown*, 36 Wn. App. 549, 559, 676 P.2d 525 (1984) (Defendants who invaded victim's home and took stereo to secure return of purse and gun allegedly taken by victim were not entitled to instruction on good faith claim of title defense where there was no evidence to show stereo belonged to defendants.); *State v. Hicks*, 102 Wn.2d 182, 187, 683 P.2d 186 (1984) (It was error for court not to give a good faith claim of title instruction where evidence was presented that defendant believed the cash he took from victim was the same cash missing from his room.).

Although Mr. Martin's taking of the blue Trek bike was open and avowed where he left a note at the Browns' residence indicating he was taking the bike, he presented insufficient evidence at trial to establish either a factual or legal basis for a good faith belief that he held title to the bike.

Mr. Martin's note and his comment to the arresting officer, referring to the bike as his own, evidenced a subjective belief on the part of Mr. Martin that the bike taken from the Browns' house was his. However, subjective belief is not enough to warrant the instruction—Mr. Martin was also required to demonstrate objective evidence to support such a belief. Contrary to Mr. Martin's argument, his prior gift of a different bike to

Mr. Brown does not allow for a reasonable inference that Mr. Martin believed he had a claim of title to the bike he removed from the Browns' home. Unlike *Hicks*, where the defendant's missing cash was indistinguishable from the cash he found in the victim's possession, the two bikes at issue here were substantially different: they were different colors, made of different material, had different types of brakes, and each bore a different brand name.

Moreover, Mr. Martin did not claim in good faith that he owned the Trek bike, but instead claimed that he thought the bike he was possessing was his old Allay bike. This court has previously recognized that the good faith claim of title defense does not apply when the defendant mistakenly believes the property taken is a different item of property. *State v. Hawkins*, 157 Wn. App. 739, 749-50, 238 P.3d 1226 (2010) (Reasoning in dicta that where defendant mistakenly thought the tractor he was possessing was his own tractor, this mistake of fact did not present a factual basis for finding that he believed he was entitled to ownership of the victim's tractor.). Here, where Mr. Martin apparently believed the bike he removed was the Allay bike, this mistake of fact may present an issue of unwitting possession or lack of knowledge that the bike was stolen, but it did not present a factual basis for believing he was entitled to ownership of the Trek bike.

In any event, Mr. Martin did not have a factual or legal basis for a good faith claim of title to the Allay bike (assuming Mr. Brown had not sold it). Mr. Brown testified that when Mr. Martin offered him the Allay bike, he asked Mr. Martin how much money he wanted for it, and Mr. Martin told him he could have it and that he did not expect Mr. Brown to pay for it. Approximately one year later, Mr. Martin left several messages for Mr. Brown indicating he had decided he wanted some money for the bike. Although Mr. Brown told Mike he was willing to give Mr. Martin some money, Mr. Brown never told Mr. Martin he agreed to pay him. Mr. Martin did not testify at trial. On these undisputed facts, where the bike was a gift and Mr. Brown never agreed to pay for the bike, title to the bike had vested in Mr. Brown and Mr. Martin could not assert a claim of title roughly two years after he gifted the bike to Mr. Brown, or claim he was using self-help to collect his property. Accordingly, even if Mr. Martin had taken the Allay bike, rather than the Trek bike, he could not have asserted the defense of good faith claim to title.

Mr. Martin failed to provide sufficient evidence of a legal or factual basis for a good faith claim of title to Mr. Brown's bike, and the trial court did not err by refusing to give the requested instruction.

MOTION TO STRIKE CRIMINAL FILING FEE AND DNA FEE

While his appeal was pending, Mr. Martin moved to strike the criminal filing fee and DNA fee imposed by the trial court at sentencing. At the time Mr. Martin was sentenced in February 2018, these fees were mandatory. A legislative enactment effective June 7, 2018,[4] amended RCW 43.43.7541 to provide that DNA fees are mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." Similarly, RCW 36.18.020(2)(h) was amended to prohibit imposition of the $200 criminal filing fee on indigent defendants. These amendments apply prospectively to cases pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714, 721-23 (2018). That includes Mr. Martin's case.

The trial court found that Mr. Martin was indigent both for purposes of the superior court proceeding as well as this appeal. We infer that he was indigent at the time of sentencing, and therefore direct the trial court to strike the $200 criminal filing fee.

Based on Mr. Martin's extensive criminal history, including 7 prior adult felony convictions, we infer that Mr. Martin has previously provided a DNA sample pursuant to his prior felony convictions. We therefore direct the trial court to strike the $100 DNA fee.

---

[4] LAWS OF 2018, ch. 269.

10

No. 35907-7-III
*State v. Martin*

APPELLATE COSTS

In his opening brief, Mr. Martin requests that we decline to impose appellate costs on the basis of his indigency. The State did not address this request in its responsive brief. Mr. Martin filed a timely report as to his continued indigency, and the State has not challenged the accuracy of the report. We grant Mr. Martin's request to deny costs on appeal.

CONCLUSION

The conviction is affirmed. The matter is remanded to the trial court to strike the $200 filing fee and $100 DNA collection fee from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____        _____
Siddoway, J.                          Fearing, J.

11